SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In the Matter of Registrant N.B. (A-94-13) (073613)**

**Argued February 3, 2015 -- Decided July 7, 2015**

**PER CURIAM**

In this appeal, the Court considers whether an individual convicted of a sex offense enumerated in N.J.S.A. 2C:7-2(b), based on multiple acts of unlawful sexual contact with a minor to whom he is related, has committed a "sole sex offense" within the scope of the household/incest exception set forth in N.J.S.A. 2C:7-13(d)(2), and is therefore within that exception to the internet registry.

On June 8, 2011, N.B., then nineteen years of age, was indicted for one count of first-degree aggravated sexual assault, two counts of second-degree sexual assault, and one count of third-degree endangering the welfare of a child. The charges arose from allegations that N.B. sexually assaulted his half-sister, a minor, when they were living in the same household. Registrant N.B. later pled guilty to one count of sexual assault by sexual contact with a child under the age of thirteen, admitting to several acts of sexual contact with his half-sister.

In accordance with the requirements of Megan's Law, N.J.S.A. 2C:7-8, and the Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws 29-30 (rev'd Feb. 2007) (Attorney General Guidelines), the trial court held a hearing to determine whether N.B. would be assigned to Tier 1 (low risk of re-offense), Tier 2 (moderate risk of re-offense) or Tier 3 (high risk of re-offense). The trial court determined that N.B. should be designated a Tier 2 offender, presenting a moderate risk of re-offense.

The trial court also heard arguments as to whether N.B. met the requirements for the household/incest exception to internet registration under N.J.S.A. 2C:7-13(d)(2), which exempts from public access the registration record of an individual convicted of a "sole sex offense" that is committed "under circumstances in which the offender was related to the victim by blood or affinity to the third degree or was a resource family parent, a guardian, or stood in loco parentis within the household[.]" The trial court determined that N.B. did not qualify for the household/incest exception and ordered that he be included in the Megan's Law internet registry.

An appellate panel affirmed the trial court's determination that N.B. was not entitled to invoke the household/incest exception, concluding that N.B.'s multiple offenses against a single victim at different points in time precluded the application of the household/incest exception.

The Court granted registrant N.B.'s petition for certification. 217 N.J. 623 (2014).

**HELD**: A 2004 amendment defining the term "sole sex offense" indicates that the household/incest exception applies to the conviction here: a single conviction for a violation of N.J.S.A. 2C:14-2(b), "under circumstances in which the offender [is] related to the victim by blood or affinity to the third degree," notwithstanding the offender's admission to multiple acts of sexual contact against the victim. Therefore, N.B. is within the household/incest exception of N.J.S.A. 2C:7-13(d)(2). The matter is remanded to the trial court for a determination as to whether N.B.'s registration record should be made available to the public, notwithstanding the applicability of the household/incest exception.

1. The registration provision of Megan's Law was enacted to "permit law enforcement officials to identify and alert the public when necessary for the public safety," and "provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1. Registration with law enforcement is required if an individual "has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of" certain enumerated sex offenses. N.J.S.A. 2C:7-2(a)(1). The Legislature amended Megan's Law in 2001 to make information in the State registry about certain sex offenders

publicly available on the internet. However, an offender's individual registration record is ordinarily excluded from the internet registry if the offender has been adjudged to have a moderate risk of re-offense and his or her "sole sex offense" is within one of three exceptions set forth in the statute. (pp. 9-11)

2. The provision that is the subject of this appeal, N.J.S.A. 2C:7-13(d)(2), is the second of the three exceptions to the internet registry. That provision exempts from public access individual registration records of certain offenders deemed to pose a "moderate" risk of re-offense. N.J.S.A. 2C:7-13(d)(2) applies if three requirements are met: (1) the offender must present a "moderate" risk of re-offense; (2) the offender's "sole sex offense" must be a conviction or acquittal by reason of insanity for a violation of sexual assault or criminal sexual contact; and (3) the offender must be "related to the victim by blood or affinity to the third degree or [have been] a resource family parent, a guardian," or the offender must have "stood in loco parentis within the household[.]" The term "sole sex offense" was undefined in the original statute, but, in 2004, a series of amendments provided a statutory definition of the term as it appears in N.J.S.A. 2C:7-13(d): "For purposes of this subsection, "sole sex offense" means a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for a sex offense which involved no more than one victim, no more than one occurrence or, in the case of an offense which meets the criteria of paragraph (2) of this subsection, members of no more than a single household." (pp. 12-14)

3. Here, the Court must determine whether the Legislature intended that an offender, whose conviction otherwise meets the requirements of N.J.S.A. 2C:7-13(d), qualifies for the household/incest exception notwithstanding his or her admission to more than one instance of sexual contact with a victim who is his or her relative. As applied to this case, the text of N.J.S.A. 2C:7-13(d)(2) itself is ambiguous. However, the 2004 amendment defining "sole sex offense" provides more compelling evidence of the Legislature's intent, and directly addresses the issue raised by this appeal. That clause distinguishes between the exceptions prescribed by N.J.S.A. 2C:7-13(d)(1) and (d)(3), and the household/incest exception at issue here. As applied to subparagraphs (d)(1) and (d)(3), the statute excludes an offender if his or her offense involves more than one victim or more than one occurrence. N.J.S.A. 2C:7-13(d). In contrast, an offender in the household/incest category may qualify for the exception in a broader range of cases: those which involve "no more than one victim, no more than one occurrence or . . . members of no more than a single household." N.J.S.A. 2C:7-13(d) (emphasis added). (pp. 14-18)

4. The Court must interpret laws so as to give meaning to all of the Legislature's statutory text. Here, a construction of N.J.S.A. 2C:7-13(d) that applies the N.J.S.A. 2C:7-13(d)(2) exception to individuals such as N.B., whose "sole sex offense" meets the criteria of that exception and involves "members of no more than a single household," gives meaning to every word chosen by the Legislature. The legislative history of the 2004 amendment, including the statements of the Senate and Assembly committees that reported on the bill, is consistent with this construction. Accordingly, the Court concludes that the Legislature intended the household/incest exception to apply to a registrant whose single conviction otherwise meets the requirements of N.J.S.A. 2C:7-13(d)(2) and involves more than one instance of sexual contact with a single victim who is within his or her household. (pp. 19-21)

5. The Court notes that even if one of the exceptions of N.J.S.A. 2C:7-13(d) applies to a given offender, that offender's registration record may nonetheless be made available to the public through the internet if certain statutory requirements are met. Accordingly, the Court remands to the trial court for a determination as to whether N.B.'s registration record should be made available to the public, notwithstanding the applicability of the household/incest exception of N.J.S.A. 2C:7-13(d)(2). (pp. 22-23)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in this opinion.**

IN THE MATTER OF REGISTRANT
N.B. APPLICATION FOR JUDICIAL
REVIEW OF NOTIFICATION AND
TIER CLASSIFICATION

Argued February 3, 2015 – Decided July 7, 2015

On certification to the Superior Court,
Appellate Division.

James H. Maynard argued the cause for
appellant N.B. (Maynard & Sumner,
attorneys).

Colleen F. Hannon, Assistant Prosecutor,
argued the cause for respondent State of New
Jersey (Gaetano T. Gregory, Acting Hudson
County Prosecutor, attorney; Anneris V.
Hernandez, Assistant Prosecutor, on the
brief).

PER CURIAM

The statutory scheme known as "Megan's Law," N.J.S.A. 2C:7-1 to -19, requires that prescribed categories of sex offenders register with law enforcement agencies through a central registry maintained by the Superintendent of State Police. N.J.S.A. 2C:7-2(a)(1), 4(d).  The public is given access to the registration record of an individual who has been convicted of certain enumerated sex offenses if the individual's risk of re-offense is either "high," or "moderate or low" and the conduct

1

was repetitive and compulsive. N.J.S.A. 2C:7-13(b). However, an offender's individual registration record is ordinarily excluded from the internet registry if the offender has been adjudged to have a moderate risk of re-offense and his or her "sole sex offense," which subjects him or her to Megan's Law, is within one of three exceptions set forth in the statute. N.J.S.A. 2C:7-13(d).

One of the exceptions is the "household/incest" exception defined in N.J.S.A. 2C:7-13(d)(2). That provision exempts from public access the registration record of an individual convicted of a "sole sex offense" that is committed "under circumstances in which the offender was related to the victim by blood or affinity to the third degree or was a resource family parent, a guardian, or stood in loco parentis within the household[.]" N.J.S.A. 2C:7-13(d)(2).

This appeal requires that we determine whether an individual convicted of a sex offense enumerated in N.J.S.A. 2C:7-2(b), based on multiple acts of unlawful sexual contact with a minor to whom he is related, has committed a "sole sex offense" within the scope of the household/incest exception set forth in N.J.S.A. 2C:7-13(d)(2), and is therefore within that exception to the internet registry. Registrant N.B. pled guilty to one count of sexual assault by sexual contact with a child under the age of thirteen, admitting to several acts of sexual

2

contact with his half-sister.  The trial court determined that N.B. did not qualify for the household/incest exception set forth in N.J.S.A. 2C:7-13(d)(2) and ordered that he be included in the Megan's Law internet registry.  An appellate panel affirmed the trial court's determination that N.B. was not entitled to invoke the household/incest exception.

We reverse the panel's judgment.  Although we conclude that the text of N.J.S.A. 2C:7-13(d)(2) is ambiguous and no clear indication of legislative intent can be derived from that provision's plain language, a 2004 amendment to N.J.S.A. 2C:7-13(d) that defined the term "sole sex offense" provides evidence of legislative intent and clarifies the ambiguity.  L. 2004, c. 151 (codified at N.J.S.A. 2C:7-13(d)).  Construed in a manner that gives meaning to all of the words chosen by the Legislature, that provision indicates that N.J.S.A. 2C:7-13(d)(2) applies to the conviction here:  a single conviction for a violation of N.J.S.A. 2C:14-2(b), "under circumstances in which the offender [is] related to the victim by blood or affinity to the third degree," notwithstanding the offender's admission to multiple acts of sexual contact against the victim. Therefore, N.B. is within the household/incest exception of N.J.S.A. 2C:7-13(d)(2).

Pursuant to N.J.S.A. 2C:7-13(e), we remand to the trial court for a determination as to whether N.B.'s registration

3

record should be made available to the public, notwithstanding the applicability of the household/incest exception of N.J.S.A. 2C:7-13(d)(2).

I.

On June 8, 2011, N.B., then nineteen years of age, was indicted for one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The charges arose from allegations that N.B. sexually assaulted his half-sister, a minor, when they were living in the same household.

N.B. entered into a plea agreement with the State. He agreed to plead guilty to one count of second-degree sexual assault. The State agreed to move to dismiss the remaining counts of the indictment and to recommend a sentence consisting of a three-year suspended sentence, mandatory registration with local police pursuant to N.J.S.A. 2C:7-2(a), notification to the community according to his tier ranking, N.J.S.A. 2C:7-6, and Parole Supervision for Life (PSL), N.J.S.A. 2C:43-6.4. The State and N.B. agreed that his plea would dispose of all charges in the indictment, as well as any potential charges that arose from N.B.'s contact with his half-sister before he reached the age of eighteen.

4

During N.B.'s plea hearing, his counsel advised the trial court that N.B. was not contesting allegations concerning incidents that occurred when he was a juvenile, in order that he would not later face charges arising from those allegations. N.B. admitted on the record that he had sexual contact with the victim on certain dates between April 14, 2010, and February 5, 2011, when he was a juvenile. N.B. did not admit to any offense involving a victim other than his half-sister. The court accepted N.B.'s plea and subsequently imposed a three-year suspended sentence, subject to the provisions of Megan's Law and PSL.

In accordance with the requirements of Megan's Law, N.J.S.A. 2C:7-8, and the Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws 29-30 (rev'd Feb. 2007) (Attorney General Guidelines), the trial court held a hearing to determine whether N.B. would be assigned to Tier 1 (low risk of re-offense), Tier 2 (moderate risk of re-offense) or Tier 3 (high risk of re-offense). The trial court agreed with the State's assessment of N.B. under a series of criteria rankings set forth in the Registrant Risk Assessment Scale (RRAS) and that N.B. should be designated a Tier 2 offender, presenting a moderate risk of re-offense.

5

The trial court also heard arguments as to whether N.B. met the requirements for the household/incest exception to internet registration under N.J.S.A. 2C:7-13(d)(2). The State argued that N.B. did not satisfy that exception because he had admitted to multiple offenses over several years. It also opposed application of the exception to N.B. because, in one reported incident, N.B. allegedly made a sexual comment to a child who was a friend of his half-sister. N.B. argued that he committed a "sole sex offense," within the meaning of N.J.S.A. 2C:7-13(d), because a single conviction for multiple incidents constituted one "offense." The trial court ruled in favor of the State and held that N.B. did not meet the criteria for the household/incest exception under N.J.S.A. 2C:7-13(d)(2). In the wake of that holding, the trial court did not make a finding as to whether N.B.'s registration record should be made available to the public under N.J.S.A. 2C:7-13(e).

The trial court ordered that specific schools and community organizations located within one-half mile of N.B.'s residence be notified, pursuant to N.J.S.A. 2C:7-8(c) and the Attorney General Guidelines, and that N.B. be listed on the Megan's Law internet registry, as mandated by N.J.S.A. 2C:7-13(b). With the consent of the State, the trial court stayed the Megan's Law notification and internet registration provisions of its order, pending appeal.

N.B. appealed, arguing that interviews of his half-sister and her friend were improperly conducted and that the trial court had therefore incorrectly assessed one of the RRAS criteria. The trial court, on remand, reviewed videotapes of the interviews and a statement by the victim's mother, and reaffirmed its decision assigning N.B. a Tier 2 designation.

N.B. then challenged several of the trial court's RRAS findings. The Appellate Division affirmed, finding clear and convincing evidence to support the trial court's determinations with respect to the challenged RRAS criteria. It also concurred with the trial court's construction of N.J.S.A. 2C:7-13(d)(2), holding that the trial court did not abuse its discretion when it concluded that N.B.'s multiple offenses against a single victim at different points in time precluded the application of the household/incest exception.

We granted certification. 217 N.J. 623 (2014).

## II.

N.B. urges the Court to construe N.J.S.A. 2C:7-13(d) to create two alternative definitions of "sole sex offense": first, an offense involving "no more than one occurrence" and "no more than one victim," and second, an offense involving "members of no more than a single household." He argues that even if an offender has committed more than one offense, and therefore does not meet the requirements of the first

7

alternative, he or she can still qualify for the household/incest exception if his or her offenses involved one or more members of a single household. N.B. also advances a public policy argument, arguing that the Attorney General Guidelines reflect persuasive evidence that sex offenders who are related to their victims have a low rate of recidivism.

The State counters that N.B.'s plea allocution involved admissions that preclude application of the N.J.S.A. 2C:7-13(d)(2) exception because he conceded that he committed multiple sex offenses. In the State's view, no matter which of N.J.S.A. 2C:7-13(d)'s three exceptions is at issue, an individual does not qualify for an exception to the internet registry if he or she has committed more than one sex offense within the meaning of the statute. The State contends that the Appellate Division properly affirmed the trial court's determination that the household/incest exception does not apply to N.B.[1]

III.

A.

---

[1] The State also addresses arguments raised by N.B. before the trial court and the Appellate Division concerning the propriety of his Tier 2 designation under N.J.S.A. 2C:7-8. N.B. has not raised those issues before us, and accordingly, we do not address them.

We review de novo the holdings of the Appellate Division and the trial court construing the household/incest exception of N.J.S.A. 2C:7-13(d)(2). The question is one of statutory interpretation, and accordingly, we are "neither bound by, nor required to defer to, the legal conclusions of a trial or intermediate appellate court." State v. Gandhi, 201 N.J. 161, 176 (2010); see also State v. Williams, 218 N.J. 576, 586 (2014) (citing Toll Bros v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

The registration provision of Megan's Law was enacted to "permit law enforcement officials to identify and alert the public when necessary for the public safety," and "provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1. Registration with law enforcement is required if an individual "has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of" certain enumerated sex offenses. N.J.S.A. 2C:7-2(a)(1).[2]

---

[2] The registration requirement applies if an offender is "convicted, adjudicated delinquent or found not guilty by reason of insanity for" a "sex offense," defined as "[a]ggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to [N.J.S.A. 2C:13-1(c)(2)] or an attempt to commit any of these crimes if the court found that the offender's conduct was characterized by a pattern of

9

An individual subject to the registration requirement must notify appropriate law enforcement officials upon a change of address, job, or school; failure to provide the required notification is currently a fourth-degree offense. N.J.S.A. 2C:7-2(d). An offender deemed to be repetitive or compulsive must verify his or her address with law enforcement every ninety days; other offenders must verify annually. N.J.S.A. 2C:7-2(e).

Through Megan's Law, the Legislature also provided for public notification. The statute authorizes law enforcement agencies "to release relevant and necessary information regarding sex offenders to the public when the release of the information is necessary for public protection[.]" N.J.S.A. 2C:7-5(a). Upon release from incarceration, local law enforcement must provide notification of the inmate's release to the community. N.J.S.A. 2C:7-6. The Attorney General Guidelines, promulgated pursuant to N.J.S.A. 2C:7-8(a), "provide for three levels of notification depending upon the risk of re-offense . . . ." N.J.S.A. 2C:7-8(c).[3] If the risk of re-offense

---

repetitive, compulsive behavior, regardless of the date of the commission of the offense or the date of conviction[.]" N.J.S.A. 2C:7-2(a)(1), (b)(1).

[3] A given offender's risk of re-offense is assessed under the RRAS, developed by mental health and law enforcement experts. IMO Registrant C.A., 146 N.J. 71, 82 (1996). The RRAS contains four categories: seriousness of offense, offense history, characteristics of offender, and community support; within those

is low, law enforcement agencies likely to encounter the registrant are notified. N.J.S.A. 2C:7-8(c)(1). If the risk of re-offense is moderate, organizations in the community are also notified. N.J.S.A. 2C:7-8(c)(2). If the risk of re-offense is high, notification is also given to members of the public who are likely to encounter the registrant. N.J.S.A. 2C:7-8(c)(3).

Under the authority of a constitutional amendment adopted in 2000, N.J. Const. art. IV, § 7, ¶ 12, the Legislature amended Megan's Law in 2001 to make information in the State registry about certain sex offenders publicly available on the internet.[4] L. 2001, c. 167 (codified at N.J.S.A. 2C:7-13). The Legislature found that public access to the registry of sex offenders via the internet "would make this information readily accessible to

---

categories are thirteen risk assessment criteria, which include "the statutory factors as well as other factors deemed relevant to re-offense." Ibid. The offender is assessed as low, moderate, or high risk for each of the thirteen criteria, and the offender's risk of re-offense is calculated. Ibid. "[A] tier classification made on the basis of the [RRAS] should be afforded deference[.]" Id. at 108.

[4] Although the statute authorizes law enforcement to "exclude from the Internet registry the registration information of certain sex offenders," N.J.S.A. 2C:7-12, the information generally available to the public includes identifying information about the offender, such as name, address, aliases, "age, race, sex, date of birth, height, weight, hair," scars or tattoos, and a photograph, as well as information about the offense(s), including convictions for certain sex offenses, date and location of disposition, a description of the offense, victim's gender, victim's age group, and the offender's "modus operandi," N.J.S.A. 2C:7-113(g).

11

parents and private entities, enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk." N.J.S.A. 2C:7-12. The Legislature also provided protections for offenders from threats, harassment and misuse of the information disclosed. N.J.S.A. 2C:7-14(a); N.J.S.A. 2C:7-16.

The provision that is the subject of this appeal, N.J.S.A. 2C:7-13(d)(2), exempts from public access individual registration records, which would otherwise be included on the internet registry, of certain offenders deemed to pose a "moderate" risk of re-offense:

> d. The individual registration record of an offender whose risk of re-offense has been determined to be moderate and for whom the court has ordered notification in accordance with [N.J.S.A. 2C:7-8(c)(2)] shall not be made available to the public on the Internet registry if the sole sex offense committed by the offender which renders him subject to the requirements of [Megan's Law] is one of the following:
>
> > (1) An adjudication of delinquency for any sex offense as defined in [N.J.S.A. 2C:7-2(b)(2)];
> >
> > (2) A conviction or acquittal by reason of insanity for a violation of [N.J.S.A.] 2C:14-2 or [N.J.S.A.] 2C:14-3 under circumstances in which the offender was related to the victim by blood or affinity to the third degree or was a resource family parent, a guardian, or stood in loco parentis within the household; or

12

(3) A conviction or acquittal by reason of insanity for a violation of [N.J.S.A.] 2C:14-2 or [N.J.S.A.] 2C:14-3 in any case in which the victim assented to the commission of the offense but by reason of age was not capable of giving lawful consent.

[N.J.S.A. 2C:7-13(d).]

N.J.S.A. 2C:7-13(d)(2) applies if three requirements are met. First, the offender must present a "moderate" risk of re-offense. Ibid. Second, the offender's "sole sex offense" must be "[a] conviction or acquittal by reason of insanity for a violation of [N.J.S.A. 2C:14-2 (sexual assault)] or [N.J.S.A. 2C:14-3 (criminal sexual contact)]." Ibid. Third, the offender must be "related to the victim by blood or affinity to the third degree or [have been] a resource family parent, a guardian," or the offender must have "stood in loco parentis within the household[.]" Ibid.

The term "sole sex offense" was undefined in the original statute. In a 2004 series of amendments to Megan's Law, the Legislature provided, for the first time, a statutory definition of the term "sole sex offense" as it appears in N.J.S.A. 2C:7-13(d):

For purposes of this subsection, "sole sex offense" means a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for a sex offense which involved no more than one victim, no more than one occurrence or, in the case of an offense which meets the criteria of

13

paragraph (2) of this subsection, members of
no more than a single household.

Since the 2004 amendment, the Legislature has not further clarified its intent with respect to the household/incest exception at issue in this appeal.

B.

It is undisputed that N.B. meets several of the requirements of N.J.S.A. 2C:7-13(d). The trial court deemed his risk of re-offense to be "moderate" and subjected him to the notification provisions of N.J.S.A. 2C:7-8(c)(2). Moreover, N.B. was convicted of "a violation of [N.J.S.A.] 2C:14-2 . . . under circumstances in which the offender was related to the victim by blood or affinity to the third degree," N.J.S.A. 2C:7-13(d)(2), as his plea of guilty to second-degree sexual assault was premised entirely on sexual contact with his minor half-sister. He had only a single sexual assault conviction for conduct within the scope of N.J.S.A. 2C:7-13(d)(2), and only one victim was involved. N.B., however, admitted in his plea allocution to sexual contact with his half-sister on multiple occasions. Accordingly, we must determine whether the Legislature intended that an offender, whose conviction otherwise meets the requirements of N.J.S.A. 2C:7-13(d), qualifies for the household/incest exception notwithstanding his

14

or her admission to more than one instance of sexual contact with a victim who is his or her relative.

In that inquiry, we rely upon settled principles of statutory construction. "The primary goal of statutory interpretation 'is to determine as best [as possible] the intent of the Legislature, and to give effect to that intent.'" State v. Lenihan, 219 N.J. 251, 262 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)); see also State v. Shelley, 205 N.J. 320, 323 (2011). "[T]he best indicator of that intent is the plain language chosen by the Legislature." Gandhi, supra, 201 N.J. at 176. The Legislature has instructed that, when construing "its statutes, 'words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the Legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting N.J.S.A. 1:1-1).

"When the Legislature's chosen words lead to one clear and unambiguous result, the interpretative process comes to a close, without the need to consider extrinsic aids." Shelley, supra, 205 N.J. at 323. A court "seek[s] out extrinsic evidence, such as legislative history, for assistance when statutory language yields 'more than one plausible interpretation.'" Id. at 323-24

15

(quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)); see also Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 419 (2009) (stating that "if there is ambiguity in the statutory language that leads to more than one plausible interpretation, [a court] may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction, for further assistance in [its] interpretative task" (internal quotation marks omitted)). A court may also turn to extrinsic evidence "if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012) (citations omitted).

With those principles in mind, we consider the meaning of the provision at issue. As applied to this case, the text of N.J.S.A. 2C:7-13(d)(2) itself is ambiguous. On the one hand, N.J.S.A. 2C:7-13(d)'s use of the term "sole sex offense" suggests that the household/incest exception is available only to offenders who commit a single act of sexual assault, and not to offenders who have admitted to multiple offenses against a single victim. On the other hand, N.J.S.A. 2C:7-13(d)(2) appears to govern when the "sole sex offense" is a single conviction and the victim is the offender's relative, even if there is more than one instance of sexual contact. N.J.S.A.

16

2C:7-13(d)(2). Thus, the language of the original version of N.J.S.A. 2C:7-13(d) is subject to conflicting interpretations.

The 2004 amendment defining "sole sex offense," however, provides more compelling evidence of the Legislature's intent. In the first clause of that provision, the Legislature confirmed that the exceptions presented in N.J.S.A. 2C:7-13(d) are limited to offenders such as N.B., with a "single conviction, adjudication of guilty or acquittal by reason of insanity" for an enumerated sex offense. N.J.S.A. 2C:7-13(d). Thus, an offender who has more than one conviction, adjudication or acquittal by reason of insanity for an enumerated sex offense may not invoke the exceptions of N.J.S.A. 2C:7-13(d).

The second clause of the 2004 amendment that defined "sole sex offense" directly addresses the issue raised by this appeal. That clause distinguishes between the exceptions prescribed by N.J.S.A. 2C:7-13(d)(1) and (d)(3), and the household/incest exception at issue here. See N.J.S.A. 2C:7-13(d). As applied to N.J.S.A. 2C:7-13(d)(1) and (d)(3), the statute limits "sole sex offense" to "a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be," for a sex offense involving "no more than one victim, no more than one occurrence . . . ." N.J.S.A. 2C:7-13(d). The statute thus excludes an offender who otherwise meets the requirements of N.J.S.A. 2C:7-13(d)(1) or N.J.S.A. 2C:7-13(d)(3) if his or her

17

offense involves more than one victim or more than one occurrence.[5]

In contrast, an offender in the household/incest category governed by N.J.S.A. 2C:7-13(d)(2) may qualify for the exception in a broader category of cases:  those which involve "no more than one victim, no more than one occurrence or . . . members of no more than a single household."  N.J.S.A. 2C:7-13(d) (emphasis added).  The statutory text suggests that N.J.S.A. 2C:7-13(d)(2) is intended to be less restrictive than the two other exceptions prescribed by N.J.S.A. 2C:7-13(d).

That distinction is significant.  If, as the State contends, the Legislature intended that none of the three exceptions set forth in N.J.S.A. 2C:7-13(d) are available to a registrant whose sex offense involves more than one victim or more than one occurrence, then it would have left out several of the words that appear in the statute.  For all three of the exceptions set forth in N.J.S.A. 2C:7-13(d), the Legislature would have limited "sole sex offense" to a single conviction, adjudication or acquittal by reason of insanity "for a sex

---

[5] N.J.S.A. 2C:7-13(d)(1) applies when the offender has been adjudicated delinquent for a sex offense under N.J.S.A. 2C:7-2(b)(2), rather than convicted as an adult.  N.J.S.A. 2C:7-13(d)(3) applies when the offender has been convicted or acquitted by reason of insanity of violating N.J.S.A 2C:14-2 or -3 when an underage victim assented to the commission of the offense.  N.J.S.A. 2C:7-13(d)(3).

18

offense which involved no more than one victim, no more than one occurrence." N.J.S.A. 2C:7-13(d). Instead, the Legislature separately addressed the household/incest exception in the final clause of N.J.S.A. 2C:7-13(d): "or, in the case on an offense which meets the criteria of [N.J.S.A. 2C:7-13(d)(2)], members of no more than a single household." If the State is correct, and none of the statute's three exceptions are available to an offender whose offenses involved more than one victim and one occurrence, then the final clause of the statute is superfluous.

Such an interpretation would contravene the canon of statutory construction that directs courts to interpret laws so as to give meaning to all of the Legislature's statutory text. In re Civil Commitment of J.M.B., 197 N.J. 563, 573 (2009) ("Interpretations that render the Legislature's words mere surplusage are disfavored."); see also DKM Residential Props. Corp. v. Twp. of Montgomery, 182 N.J. 296, 307 (2005) ("When interpreting a statute or regulation, [the Court] endeavors to give meaning to all words . . . ." (citations omitted)). The Court must "seek an interpretation that will 'make the most consistent whole of the statute.'" State v. Sutton, 132 N.J. 471, 479 (1993) (quoting State v. A.N.J., 98 N.J. 421, 424 (1985)). Here, a construction of N.J.S.A. 2C:7-13(d) that applies the N.J.S.A. 2C:7-13(d)(2) exception to individuals such as N.B., whose "sole sex offense" meets the criteria of that

19

exception and involves "members of no more than a single household," gives meaning to every word chosen by the Legislature.

The legislative history of the 2004 amendment is consistent with this construction of N.J.S.A. 2C:7-13(d). The Senate and Assembly committees that reported on the bill issued nearly identical statements explaining the scope of the N.J.S.A. 2C:7-13(d) exceptions to Megan's Law registration requirements:

> These narrow exceptions apply to sex offenders deemed to be a moderate risk of re-offense who have committed no more than a single "Megan's Law" sex offense which falls into one of the three enumerated categories. In rulings concerning these exceptions, courts have varied on the meaning of the "sole sex offense" requirement. For example, some courts have construed this term to apply to offenses which involved only a single incident or occurrence, or no more than one victim. Other courts have construed this term more broadly, considering the term to contemplate the character, rather than the number of offenses committed by a defendant, and therefore applying the exception to offenders who had one conviction which involved multiple incidents or victims but which were consolidated into separate counts of a single indictment.
>
> This bill clarifies the legislative intent by defining "sole sex offense" as a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for a sex offense which involved no more than one victim, no more than one occurrence or, in the case of the incest exception, members of no more than a single household. This clarification will help ensure that the statutory exemption from

20

inclusion on the Internet registry is not improperly applied to repeat sex offenders who offend against more than one victim or who victimize a single individual more than once.

[S. Comm. Statement to S. 1208 (May 6, 2004); Assemb. Comm. Statement to S. 1208 (June 3, 2004).]

Thus, the Senate and Assembly committee statements reiterate the statutory language distinguishing "the incest exception" of N.J.S.A. 2C:7-13(d)(2) from the narrower exceptions set forth in N.J.S.A. 2C:7-13(d)(1) and (d)(3). The final sentence of each committee statement, which summarizes the amendment, but omits the reference to the household/incest exception of N.J.S.A. 2C:7-13(d)(2), does not nullify the statutory language.

Accordingly, we conclude that the Legislature intended the household/incest exception to apply to a registrant whose single conviction otherwise meets the requirements of N.J.S.A. 2C:7-13(d)(2) and involves more than one instance of sexual contact with a single victim who is within his or her household. N.J.S.A. 2C:7-13(d)(2).[6] N.J.S.A. 2C:7-13(d)(2) applies to N.B., who has a single conviction for one count of second-degree

---

[6] If we have misconstrued the legislative intent, a clarifying amendment by the Legislature can remedy any misperception.

21

sexual assault, premised upon his sexual contact with a relative.[7]

## IV.

Even if one of the exceptions of N.J.S.A. 2C:7-13(d) applies to a given offender, that offender's registration record may nonetheless be made available to the public through the internet if the requirements of N.J.S.A. 2C:7-13(e) are met:

> Notwithstanding the provisions of [N.J.S.A. 2C:7-13(d)], the individual registration record of an offender to whom an exception enumerated in [N.J.S.A. 2C:7-13(d)(1), (2) or (3)] applies shall be made available to the public on the Internet registry if the offender's conduct was characterized by a pattern of repetitive, compulsive behavior, or the State establishes by clear and convincing evidence that, given the particular facts and circumstances of the offense and the characteristics and propensities of the offender, the risk to the general public posed by the offender is substantially similar to that posed by offenders whose risk of re-offense is moderate and who do not qualify under the enumerated exceptions.
>
> [N.J.S.A. 2C:7-13(e).]

Although the State argued before the trial court that N.B.'s interaction with his half-sister's friend indicated that

---

[7] N.B.'s conviction was based on a plea allocution admitting to acts only against a single victim, his half-sister. Accordingly, we do not address whether an offender with a single conviction premised upon multiple admitted acts upon multiple victims, all within the household and to whom the offender was related "by blood or affinity to the third degree . . . ," would fall within the household/incest exception of N.J.S.A. 2C:7-13(d)(2).

22

he might pose a greater risk to the public than a typical offender in the household/incest category, the record does not reveal a finding by the trial court under N.J.S.A. 2C:7-13(e). Accordingly, on remand, N.B. should be included on the internet registry if the trial court determines that his "conduct was characterized by a pattern of repetitive, compulsive behavior, or the State establishes by clear and convincing evidence that" N.B. poses a risk to the general public that is "substantially similar to that posed by offenders whose risk of re-offense is moderate and who do not qualify under the enumerated exceptions."  N.J.S.A. 2C:7-13(e).

## V.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in this opinion.

23

SUPREME COURT OF NEW JERSEY

NO.     A-94                          SEPTEMBER TERM 2013

ON CERTIFICATION TO      Appellate Division, Superior Court


IN THE MATTER OF REGISTRANT
N.B. APPLICATION FOR JUDICIAL
REVIEW OF NOTIFICATION AND
TIER CLASSIFICATION


DECIDED          July 7, 2015
               Chief Justice Rabner                    PRESIDING
OPINION BY              Per Curiam
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |