# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2632-18T1

IN THE MATTER OF
REGISTRANT M.H.

_____

Argued telephonically May 7, 2020 –
Decided May 19, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. 18040006.

Jesse M. DeBrosse, Assistant Deputy Public Defender, argued the cause for appellant/cross-respondent M.H. (Joseph E. Krakora, Public Defender, attorney; Jesse M. DeBrosse, of counsel and on the briefs).

Matthew T. Spence, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent/cross-appellant State of New Jersey (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Matthew T. Spence, of counsel and on the briefs).

PER CURIAM

M.H. was originally charged in Pennsylvania with forty-three counts of sexual assault, involving both his minor son R.H. and his minor daughter A.H.

The charges were brought after he admitted in a family counseling session to committing sexual acts against both children. He pled guilty to one count of "Involuntary Deviate Sexual Intercourse With a Child," involving his then five-year-old son. The Pennsylvania Board of Probation and Parole's Sexual Offenders Assessment Board found that he met the state's criteria for pedophilia and Sexually Violent Predator status. In accord with his negotiated plea, on September 27, 2005, M.H. was sentenced to a minimum of five, maximum of ten years, and paroled on November 15, 2013.

M.H. eventually relocated to New Jersey, and on February 7, 2019, after a Megan's Law classification hearing, was assessed as a Tier II moderate risk offender, with notification to community organizations and law enforcement agencies likely to encounter him. See N.J.S.A. 2C:7-8(c)(2). M.H. appeals, contending he should have been classified as a Tier I low-risk offender. The judge also found that because M.H. pled guilty and was sentenced on only one offense, involving conduct against only one of his two victims, he fell within the household/incest exception to Internet registration. See N.J.S.A. 2C:7-13(d)(2). The State cross-appeals the decision. We affirm.

At the hearing, M.H. presented a psychosexual risk assessment in support of his position that he should be classified as a Tier I offender. The expert who

authored the report found "no counter-indication to downward modification of [M.H.'s] registration requirements," that M.H. was at low risk for sexual recidivism, and did not pose a significant risk of sexually inappropriate or deviant behavior or sexual coercion of children.

The expert's actuarial risk assessment of M.H. was based on a number of factors, including his presence in his community for five years without sexual recidivism. His age at the time, forty-eight, also reduced his risk of recidivism. M.H. had no convictions for nonsexual violence, no other sexual offense charges or convictions, and his victims were not unrelated or strangers. The only risk factor was that one of his victims was male.

The expert weighed several dynamic risk factors. They included sexual interest, distorted attitudes to sexual assault or sexual contact, difficulties with self-management, and social emotional functioning. He evaluated M.H.'s potential for sexual recidivism in the low range.

In October 2017, M.H. was diagnosed with "autism spectrum disorder (ASD)." At the hearing, he also provided the court with a report from the ARC of New Jersey on the disorder as it relates to the criminal justice system. The report stated that M.H.'s diagnosis placed him in a group "considered at low risk of reoffending because, once they had been educated on societal norms and

3

expectations, they adhere to them very carefully and closely." The report also discussed certain factors specific to people with the ASD diagnosis in relation to their risk of re-offense. The trial judge did not mention the report when rendering her oral decision.

M.H. has a "live-in patient advocate," funded by the Department of Developmental Disabilities (DDD), who assists M.H. with his day-to-day life including "medical needs, access to resources, house repairs, job applications, financial management, and daily living needs." Additionally, M.H. participated in sex offender treatment.

The trial court found M.H.'s Registrant Risk Assessment Scale (RRAS) score of forty-six placed him in the moderate risk range. See N.J.S.A. 2C:7-8(c). M.H. did not dispute his actual score.

Nonetheless, M.H. argued that, based on the expert report, he was not in the "heartland" of Tier II offenders. Because the expert relied upon M.H.'s live-in advocate's characterization that he is a highly functioning autistic adult, the judge gave the expert report little weight and refused to classify him outside the "heartland" of moderate risk offenders.

The judge also discounted the expert's report because he did not discuss M.H.'s Pennsylvania Sexually Violent Predator assessment, nor explain how that

assessment fit with his diagnosis. In rendering her decision, the judge said "the defense has failed to show the court by clear and convincing evidence that an out of the heartland application should be granted."

The judge considered the Internet registry statute to be clearly written, allowing for little interpretation. Relying on In the Matter of Registrant N.B., 222 N.J. 87 (2015), she concluded that despite the fact defendant was charged with multiple acts against two victims, the Internet exception did not apply because he was convicted of only one offense against one child.

On appeal, M.H. argues the following:

> POINT I
> THE LAW DIVISION CORRECTLY EXCLUDED M.H. FROM THE INTERNET REGISTRY UNDER N.J.S.A. 2C:7-13(D)(2), THE HOUSEHOLD EXCEPTION, BECAUSE HIS CONVICTION FOR ONE COUNT INVOLVING HIS SON WHO LIVED WITH HIM WAS A "SINGLE CONVICTION" FOR A SEX OFFENSE INVOLVING "MEMBERS OF NO MORE THAN A SINGLE HOUSEHOLD."
>
> A.  Although M.H. offended against both his son and daughter, his predicate conviction only involved one victim, and thus the issue could be resolved on narrow grounds.
>
> B.  Since the phrase "members of no more than a single household" is plural, it applies to cases involving more than one victim, provided the offenses were committed within a single household.

POINT II
THE LAW DIVISION ERRED BY SHIFTING THE BURDEN OF PROOF TO M.H. ON HIS REQUEST FOR TIER 1 NOTIFICATION, AS THE [NEW JERSEY] SUPREME COURT HAS RULED THAT THE STATE ALWAYS BEARS THE BURDEN OF PROOF ON THE SCOPE OF NOTIFICATION.

POINT III
THE LAW DIVISION ABUSED ITS DISCRETION BY ORDERING NOTICE TO COMMUNITY ORGANIZATIONS, AS M.H. IS A HOUSEHOLD OFFENDER WHO HAS BEEN OFFENSE FREE IN THE COMMUNITY FOR 10 YEARS, IS SUPERVISED BY A LIVE-IN CARE PROVIDER, AND IS ENGAGED IN TREATMENT.

On cross-appeal, the State contends:

POINT I
THE LAW DIVISION WAS CORRECT WHEN IT ALLOWED NOTIFICATION TO SCHOOLS AND COMMUNITY GROUPS.

POINT II
THE LAW DIVISION WAS INCORRECT WHEN IT DID NOT ALLOW PUBLICATION ON THE INTERNET REGISTRY.

I.

It is black-letter law that a trial court's interpretation of a statute is subject to de novo review. State v. Nance, 228 N.J. 378, 393 (2017).

Furthermore, "the ultimate determination of a registrant's risk of reoffense and the scope of notification is reserved to the sound discretion of the trial

court."  In re G.B., 147 N.J. 62, 79 (1996).  Any classification based on the RRAS is subject to judicial review for an abuse of that discretion.  Id. at 81.

New Jersey's Megan's Law requires that the state "develop and maintain a system for making certain information in the central registry . . . publicly available by means of electronic Internet technology."  N.J.S.A. 2C:7-13(a). The statute provides exceptions to Internet registration when

> the sole sex offense committed by the offender which renders him subject to the requirements of [Megan's Law] is one of the following:
>
>     . . . .
>
> (2) A conviction or acquittal by reason of insanity for a violation of N.J.S.[A.] 2C:14-2 or N.J.S.[A.] 2C:14-3 under circumstances in which the offender was related to the victim by blood or affinity to the third degree or was a resource family parent, a guardian, or stood in loco parentis within the household . . . .
>
>     . . . .
>
> For purposes of this subsection, "sole sex offense" means a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for a sex offense which involved no more than one victim, no more than one occurrence or, in the case of an offense which meets the criteria of paragraph (2) of this subsection, members of no more than a single household.
>
> [N.J.S.A. 2C:7-13(d).]

Subsection (d)(2) is known as the household/incest exception. The issue here is whether M.H. qualifies under the exception because he was convicted of only one charge against one victim but admitted to repeated acts against two victims.

## II.

M.H. pled guilty to one count of "involuntary deviate sexual intercourse" with only R.H. The trial court found this to be "a single conviction" as defined by the statute, qualifying M.H. for the exception. M.H. contends that this was the correct interpretation; the State cross-appeals claiming the decision was error.

Statutory interpretation requires this court to "determine . . . the intent of the Legislature, and to give effect to that intent." N.B., 222 N.J. at 98 (quoting State v. Lenihan, 219 N.J. 251, 262 (2014)). The best indicator of the Legislature's intent is the plain language of the statute. Ibid. A statute's "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the Legislature . . . be given their generally accepted meaning, according to the approved usage of the language." Ibid. (quoting State v. Bolvito, 217 N.J. 221, 228 (2014)). Only when the

statutory language yields more than one interpretation do we seek out extrinsic evidence like legislative history. Ibid.

The New Jersey Supreme Court has addressed whether the "single conviction" exception applies to a registrant who pled guilty to one count of sexual assault based on multiple acts of unlawful sexual contact with one minor relative. Id. at 90-91. The Court found it was a single conviction per the statutory definition, "notwithstanding the offender's admission to multiple acts . . . against the victim." Id. at 90.

Of course, the facts of N.B. are not the same facts as these. Indeed, in N.B., the Court said it would not address whether the household exception applies to these factual circumstances. Id. at 102 n.7 ("Accordingly, we do not address whether an offender with a single conviction premised upon multiple admitted acts upon multiple victims, all within the household and to whom the offender was related 'by blood or affinity to the third degree . . . ,' would fall within the household/incest exception . . . .").

A registrant qualifies for an exception to Internet registration where there is a "sole sex offense." N.J.S.A. 2C:7-13(d). The statute defines "sole sex offense" as a single conviction involving (1) no more than one victim, no more

than one occurrence; or (2), when the offense falls under subsection (d)(2), members of no more than a single household. Ibid.

The parties do not dispute that M.H.'s offense falls under subsection (d)(2). So, in order for the exception to apply, M.H's "sole sex offense" must be a single conviction which involved members of a single household. The plain language of that definition includes M.H.—he and his son were "members" of a single household.

Like the registrant in N.B., M.H. pled guilty to one count. The Court in N.B. recognized the disparity between "sole sex offense," which implies a single act, and N.J.S.A. 2C:7-13(d)(2) requiring a conviction, which is not necessarily limited to one act. 222 N.J. at 99. After a detailed analysis of the legislative history, the Court determined that N.B.'s guilty plea qualified as a "single conviction" under the Internet exception, regardless of defendant's multiple acts. Id. at 102. Nothing in the opinion suggests that the same logic would not apply here. M.H. pled guilty to only one count of involuntary deviate sexual intercourse, even though he committed multiple acts against two victims with whom he lived. Thus, he was guilty of a single offense.

Our interpretation aligns with the N.B. Court's finding that the household exception "is intended to be less restrictive than the two other exceptions

10

prescribed by N.J.S.A. 2C:7-13(d)." Id. at 100.  Where the other two exceptions to Internet registration, subsections (d)(1) and (3), define "sole sex offense" strictly as meaning only one victim and one occurrence, the household exception is more expansive, allowing for multiple victims and multiple occurrences, so long as they are within the same household.

M.H.'s single conviction was related only to his acts against R.H.  A plain reading of the statute indicates that this alone qualifies him for the household exception under N.J.S.A. 2C:7-13(d).  The cross-appeal lacks merit.

III.

M.H.'s second and third points relate to the trial court's denial of his application for a lower tier classification and a lesser notification requirement. M.H. contends the trial court made two mistakes by: (1) erroneously shifting the burden of proof from the State to him, and (2) abusing its discretion in ordering notice to community organizations.

1.     The Trial Court's Burden Shifting

In determining the scope of notification to which a registrant must adhere, the trial court must balance the registrant's right to privacy against the community's interest in safety and notification.  G.B., 147 N.J. at 74.  The RRAS score quantifies the results of the court's balancing test by determining a

registrant's risk of re-offense.  See State v. C.W., 449 N.J. Super. 231, 260 (App. Div. 2017).  In establishing a registrant's RRAS score, courts consider thirteen factors across four categories: (a) seriousness of the offense; (b) the offender's history; (c) community support available; and (d) the characteristics of the offender.  Ibid.

A registrant's risk of re-offense can fall into one of three levels: low (Tier I), moderate (Tier II), or high (Tier III).  Ibid.  If a registrant is a Tier I risk of re-offense, the statute requires only law enforcement be notified of his presence in the community.  N.J.S.A. 2C:7-8(c)(1).  If a registrant is a Tier II risk of re-offense, the statute requires "organizations in the community including schools, religious and youth organizations" be notified.  N.J.S.A. 2C:7-8(c)(2).  If a registrant is a Tier III risk of re-offense, notification must "reach members of the public likely to encounter" the registrant.  N.J.S.A. 2C:7-8(c)(3).

While the RRAS is a "useful tool" to determine a registrant's risk of re-offense, it should not be viewed as "absolute."  In re C.A., 146 N.J. 71, 108-09 (1996).  Tier classification and notification should be made "on a case-by-case basis" within the discretion of the court and based on all evidence available, not just a registrant's RRAS score.  G.B., 147 N.J. at 78-79.

A registrant cannot challenge his RRAS score, but can challenge his proposed tier designation. He can, for example:

> introduce evidence at the hearing that the Scale calculations do not properly encapsulate his specific case; or phrased differently, a registrant may maintain that his case falls outside the "heartland" of cases and, therefore, that he deserves to be placed in a tier other than that called for by the prosecutor's Scale score.
>
> [Id. at 85.]

While the registrant bears the burden of producing evidence that the case falls out of the heartland of cases, it is ultimately the State's burden of proof and persuasion to establish by clear and convincing evidence that the proposed tier classification is warranted. E.B. v. Verniero, 119 F.3d 1077, 1108-11 (3d Cir. 1997).

The trial court misspoke in this case by stating that the burden fell on M.H. to prove by clear and convincing evidence that his case falls out of the heartland. The issue then becomes whether the error, not objected to during the hearing, was harmful—"clearly capable of producing an unjust result." R. 2:10-2. Given the strengths of the State's proofs, however, the error was harmless.

The judge expressed the reasons she discounted the expert report, reasons supported by the record. The expert ignored significant material available to him, and relied too heavily on information gleaned from a caregiver not

13

qualified to give expert opinions. Further, it is always within the provenance of the trial judge to determine whether to accept or reject an expert report, and decide the weight to be accorded to it. Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019). The judge's decision to reject the report thus seems a reasonable exercise of her discretion. Since the report was the basis for M.H.'s request that his case be taken out of the heartland of Tier II cases, this claim, like the appeal, lacks merit.

That M.H. has not reoffended in over twenty years, has a state-funded caregiver, and is enrolled in counseling do not add up to factors so compelling as to establish a heartland exception to the Tier II notification. See G.B., 147 N.J. at 82.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2632-18T1