# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2763-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

H.C.,

     Defendant-Appellant.

_____

       Submitted February 24, 2021 – Decided April 30, 2021

       Before Judges Sumners and Mitterhoff.

       On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-09-0829.

       Joel S. Silberman, attorney for appellant.

       Esther Suarez, Hudson County Prosecutor, attorney for respondent (Angela K. Halverson, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant H.C.[1] pled guilty to an amended count of criminal sexual contact.  He appeals the trial court's order classifying him as a Tier II offender under the registration and community notification provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23, which subjected him to community notification and inclusion on the Sex Offender Internet Registry (Internet Registry), N.J.S.A. 2C:7-12 to -19.  Defendant contends he qualified for the "household/incest" exception under N.J.S.A. 2C:7-13(d)(2), thus circumventing community notification and inclusion on the Internet Registry, and that the calculation of his Registrant Risk Assessment Scale (RRAS) as a Tier II offender was not supported by the record.  We disagree and affirm.

I

In April 2018, A.S. (Anita), who was twenty-four years old at the time, informed the Jersey City Police that approximately twelve to eighteen years earlier, when she was between six to twelve years old, defendant sexually assaulted her while he was taking care of her after school.  Defendant, Anita's maternal uncle, was approximately fifteen to twenty-one years old when the abuse occurred, and he was not living with her and her family.

---

[1]  We use initials and pseudonyms to protect the privacy of the victim and preserve the confidentiality of these proceedings.  N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

An investigation by the Hudson County Prosecutor's Office ensued, leading to a consensual telephone intercept between Anita and defendant. During the conversation, they discussed their sexual activities as well as defendant's sexual conduct with Anita's brother, A.M., three years her senior, and her sister, L.R., eight years her senior and approximately the same age as defendant.

Defendant was later indicted for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), second-degree sexual assault, N.J.S.A. 2C:14-2(b), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). He reached a plea agreement leading to his guilty plea to an amended count of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), and a three-year non-custodial probationary sentence together with restraining orders, and reporting and registration requirements under Megan's Law, N.J.S.A. 2C:7-1 to -11, and Nicole's Law, N.J.S.A. 2C:14-12 and N.J.S.A. 2C:44-8.

About two months after defendant's sentencing, the State served defendant with a notice of proposed Tier II moderate risk of re-offense based on an RRAS score of sixty-nine, which subjected him to community notification and placement on the Internet Registry. Defendant challenged the classification, contending the RRAS scoring was inaccurate and that he qualified for the

"household/incest" exception to circumvent community notification and the Internet Registry.

Following argument, the trial court issued an order and written decision giving defendant a fifty-six RRAS score. The court reduced the State's proposed RRAS score by thirteen points based on the following: "Criterion Seven (length of time since last offense) is changed from HIGH RISK (9 pts.) to LOW RISK (0 pts.)"; "Criterion Twelve: (Residential Support) is changed from HIGH RISK (3 pts.) to LOW RISK (0 pts.)"; and "Criterion [Thirteen]: (Employment Stability) is changed from MODERATE RISK (1 pt.) to LOW RISK (0 pts.) . . . ." However, the court rejected defendant's contention that he should qualify for the "household/incest" exception that would bar him from community notification and inclusion on the Internet Registry and upheld the State's Tier II Moderate level of risk of re-offense with a final score of fifty-six. The court stayed defendant's community notification and inclusion on the Internet Registry pending appeal.

II

Depending on the type and time of offense, Megan's Law requires certain sex offenders to register with local law enforcement agencies and notify the community. In re T.T., 188 N.J. 321, 327 (2006) (citing N.J.S.A. 2C:7-2 and

N.J.S.A. 2C:7-5 to -11; In re Registrant M.F., 169 N.J. 45, 52 (2001)). A registrant's risk of re-offense can fall into one of three levels: Tier I (low), Tier II (moderate), or Tier III (high). State v. C.W., 449 N.J. Super. 231, 260 (App. Div. 2017) (citation omitted). Under a Tier I risk of re-offense, only law enforcement must be notified of his presence in the community. N.J.S.A. 2C:7-8(c)(1). Under a Tier II risk of re-offense, "organizations in the community including schools, religious and youth organizations" must be notified in addition to the notice to law enforcement agencies. N.J.S.A. 2C:7-8(c)(2).

N.J.S.A. 2C:7-13(d) enumerates exceptions from Internet registration of an offender's record when

> the sole sex offense committed by the offender which renders him subject to the requirements of [Megan's Law] is one of the following:
>
> . . . .
>
> (2) A conviction or acquittal by reason of insanity for a violation of N.J.S.[A.] 2C:14-2 or N.J.S.[A.] 2C:14-3 under circumstances in which the offender was related to the victim by blood or affinity to the third degree or was a resource family parent, a guardian, or stood in loco parentis within the household.
>
> . . . .
>
> For purposes of this subsection, "sole sex offense" means a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for

A-2763-19

a sex offense which involved no more than one victim, no more than one occurrence or, in the case of an offense which meets the criteria of paragraph (2) of this subsection, members of no more than a single household.

Subsection (d)(2) is known as the "household/incest" exception. The issue here is whether H.C. qualifies under the exception because he was convicted of only one charge against Anita but arguably admitted to repeated sexual abuse acts against her younger brother and older sister, all of whom he did not live with.

We find instructive our Supreme Court's interpretation of N.J.S.A. 2C:7-13(d)(2) in In re N.B., 222 N.J. 87, 102 (2015). In N.B., the registrant, charged with multiple acts of unlawful sexual conduct with a blood-related minor, pled guilty to one count of second-degree sexual assault. Id. at 90-91. In determining whether he had committed a "sole sex offense" within the scope of the household/incest exception, the Court noted :

> N.J.S.A. 2C:7-13(d)(2) applies if three requirements are met. First, the offender must present a "moderate" risk of re-offense. Ibid. Second, the offender's "sole sex offense" must be "[a] conviction or acquittal by reason of insanity for a violation of [N.J.S.A. 2C:14-2 (sexual assault) ] or [N.J.S.A. 2C:14–3 (criminal sexual contact) ]." Ibid. Third, the offender must be "related to the victim by blood or affinity to the third degree . . . ."
>
> [Id. at 97 (first, second, and third alterations in original).]

A-2763-19

The Court recognized that "an offender in the household/incest category governed by N.J.S.A. 2C:7–13(d)(2) may qualify for the exception in a broader category of cases: those which involve 'no more than one victim, no more than one occurrence <u>or</u> . . . members of no more than a single household.' N.J.S.A. 2C:7–13(d)." <u>Id.</u> at 100 (alteration in original). After a detailed analysis of the statute's legislative history to resolve ambiguity because there is not an "and" or an "or" between "no more than one victim" and "no more than one occurrence," the Court "conclude[d] that the Legislature intended the household/incest exception to apply to a registrant whose single conviction otherwise meets the requirements of N.J.S.A. 2C:7-13(d)(2) and involves more than one instance of sexual contact with a single victim who is <u>within his or her household</u>." <u>Id.</u> at 102 (emphasis added).

Like the registrant in <u>N.B.</u>, defendant pled guilty to one count of a sexual offense but admitted to multiple acts. The <u>N.B.</u> Court determined that the household/incest exception applied as the victim and the defendant were members of the same household. <u>Id.</u> at 90-91. We accordingly disagree with the trial court that defendant's alleged sexual abuse of Anita's siblings serves as a basis for more than a "sole sex offense" under N.J.S.A. 2C:7-13 to disqualify him for the household/incest exception. Defendant was not convicted of those

7

offenses thus he only had a sole sex offense and would be eligible for the exception. However, defendant was not a member of the household of the victim as the registrant in N.B., therefore the household/incest exception does not apply here. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (applying the "well-settled [principle] that appeals are taken from orders and . . . not . . . opinions," and that orders may be affirmed for reasons different from those set forth by the trial court).

III

Defendant's also claims that the trial erred in calculating his RRAS. We disagree.

The RRAS was developed by a committee of mental health experts and members of the law enforcement community convened by the Attorney General. See In re V.L., 441 N.J. Super. 429 (App. Div. 2015). It was created in response to the Legislature's directive in Megan's Law for the Attorney General to "promulgate guidelines and procedures for the notification" of a sex offender's whereabouts, depending on the offender's degree of risk of re-offense. N.J.S.A. 2C:7-8.

"The RRAS is divided into four categories corresponding to the individual's seriousness of offense, offense history, personal characteristics, and

community support." C.W., 449 N.J. Super. at 260. (citation omitted). Each category contains criteria which are assigned scores corresponding to a low-, moderate-, or high-risk assessment. In re Registrant J.M., 167 N.J. 490, 499 (2001). The criteria, numbered one to thirteen respectively, are degree of force, degree of contact, age of victim, victim selection, number of offenses/victims, duration of offensive behavior, length of time since last offense, history of anti-social acts, response to treatment, substance abuse, therapeutic support, residential support, and employment stability. Att'y Gen., Guidelines for L. Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws, ex. F (rev'd Feb. 2007). The factors are then all assigned weights with a multiplier, producing an overall score that numerically classifies the offender in either Tier I, low risk of re-offense; Tier II, moderate risk of re-offense; or Tier III, high risk of re-offense. See J.M. 167 N.J. at 499.

The RRAS is, however, "only one possible consideration" of many in determining a registrant's risk of re-offense. In re G.B., 147 N.J. 62, 78 (1996). Although the RRAS is a "useful tool to help prosecutors and courts determine whether a registrant's risk of re-offense is low, high, or moderate," it is "not a scientific device." In re C.A., 146 N.J. 71, 108 (1996).

9

"[I]t is impossible to create an all-inclusive scale," and thus, "any classification based on the [RRAS] should not be viewed as absolute." Id. at 109. Judicial determinations regarding tier classification and community notification should be made "on a case-by-case basis within the discretion of the court" and "based on all the evidence available," not simply by following the "numerical calculation provided by the [RRAS]. . . . " G.B., 147 N.J. at 78-79 (quoting C.A., 146 N.J. at 109). Ultimately, "a value judgment" is required. Id. at 78 (quoting C.A., 146 N.J. at 109).

> To dispute a proposed tier designation, a defendant can, for example:
>
>> introduce evidence at the hearing that the [RRAS] calculations do not properly encapsulate his specific case; or phrased differently, a registrant may maintain that his case falls outside the "heartland" of cases and, therefore, that he deserves to be placed in a tier other than that called for by the prosecutor's [RRAS] score.
>
> [G.B., 147 N.J. at 85.]

While the defendant bears the burden of producing evidence that the case falls out of the heartland of cases, it is ultimately the State's burden of proof and persuasion to establish by clear and convincing evidence that the proposed tier classification is warranted. E.B. v. Verniero, 119 F.3d 1077, 1108-11 (3d Cir. 1997).

A-2763-19

In this case, the court's written decision thoroughly expressed its reasoning in determining that defendant's RRAS score totaled fifty-six, resulting in Tier II, moderate level of risk of re-offense. As noted above, the court reduced the State's scores for criteria seven, twelve, and thirteen. In addition, the judge cogently explained why he rejected defendant's arguments to reduce the State's high-risk scores for the following criteria: three–age of the victim, five–number of offenses/victims, and six–duration of offensive behavior. The court's determinations were based on clear and convincing evidence in the record. See G.H. v. Twp. of Galloway, 401 N.J. Super. 392, 403 (App. Div. 2008) (citation omitted); In re Registrant J.G., 169 N.J. 304, 330-31 (2001) (describing clear and convincing "as evidence on which the trier of fact can rest 'a firm belief or conviction as to the truth of the allegations sought to be established.'") (quoting In re Purrazzella, 134 N.J. 228, 240 (1993)). Because we see no abuse of the court's discretion, see G.B., 147 N.J. at 78-79 (citation omitted), defendant is subject to community notification and inclusion on the Internet Registry as a Tier II sex offender.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11