**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1496-20

IN THE MATTER OF
REGISTRANT B.B.

_____

**APPROVED FOR PUBLICATION**

**March 22, 2022**

**APPELLATE DIVISION**

Submitted October 5, 2021 – Decided March 22, 2022

Before Judges Fisher, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. ML-19-01-0027.

Cary Shill, Acting Atlantic County Prosecutor, attorney for appellant/cross-respondent State of New Jersey (Mario C. Formica, Special Deputy Attorney General/Acting Deputy First Assistant Prosecutor, of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for respondent/cross-appellant B.B. (Jonathan Edward Ingram, Assistant Deputy Public Defender, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

On appeal is the January 29, 2021 order of the Law Division designating

B.B. as a Tier II registrant under the Registration and Community Notification

Laws, N.J.S.A. 2C:7-1 to -23, commonly known as Megan's Law.  The State

appeals a provision of the order directing that B.B.'s personal identifiers not be included on the Sex Offender Internet Registry, pursuant to N.J.S.A. 2C:7-12 to -18. B.B. cross-appeals the trial court's finding under factor six of the Registrant Risk Assessment Scale (RRAS) that B.B.'s criminal sexual acts spanned more than two years. We affirm the trial court's designation of B.B. as a Tier II registrant and vacate the provision of the order excluding his personal identifiers from the Internet Registry.

## I.

In December 2009, B.B. was convicted in Pennsylvania of indecent assault against a person less than thirteen years old, contrary to 18 Pa. Cons. Stat. Ann. § 3126(a)(1). The conviction was based on B.B.'s 2005 sexual assault of his five-year-old brother. B.B. was sixteen at the time of the offense. The court sentenced B.B. to a term of incarceration of ten months and twenty-seven days, followed by probation.

In October 2015, B.B. was convicted of indecent assault against a person less than thirteen years old, contrary to 18 Pa. Cons. Stat. Ann. § 3126(a)(7). According to an affidavit of probable cause associated with his arrest, the offense took place in 2007, when B.B. was eighteen. He sexually assaulted a five-year-old girl who lived next door to him. The victim's brother, with whom she lived, was B.B.'s friend. The sexual assault occurred when B.B was

A-1496-20

spending the night at their house. For this conviction, the court sentenced B.B. to a term of incarceration of fifteen to thirty months.

Both offenses came to light many years after the sexual assaults. Pennsylvania officials categorized B.B. as a low-risk offender with a ten-year registration period and no community notification.[1]

In 2019, B.B., then thirty-one and married, moved to Atlantic County. He is employed full-time and has no children. Shortly after he relocated, B.B. registered as a sex offender with local police. His registration triggered the Megan's Law tier classification process.

The county prosecutor informed B.B. in writing of the State's intention to: (1) classify B.B. as a Tier II registrant at moderate risk to re-offend; (2) notify schools and community organizations in his neighborhood of his presence; and (3) include his personal identifiers on the Internet Registry. The notice included an RRAS score on which the proposed Tier II classification was based. B.B. objected to the proposed classification, as well as the inclusion of his personal identifiers on the Internet Registry.

---

[1] B.B. was also convicted of several non-sexual crimes outside of New Jersey: (1) in 2007, receiving stolen property; (2) in 2009, simple assault; (3) in 2013, theft; (4) in 2015, possession of controlled dangerous substances; and (5) in 2016, simple assault. He was incarcerated for some of these offenses, reducing the amount of time he spent in the community free of a sexual offense.

A-1496-20

At a hearing before the trial court, B.B. challenged the State's proposed scores on several of the RRAS factors. However, he appealed only the court's findings with respect to factor six, duration of offensive behavior. Because the evidence concerning B.B.'s sexual offenses referred only to the years in which the offenses took place, it was not possible for the trial court to determine with precision the length of time between the sexual assaults. The State argued that because the first offense took place in 2005 and the second took place in 2007, the trial court should give B.B. the high-risk score of nine on factor six applicable when the offending behavior spanned more than two years. Theoretically, the span between the two offenses could have been almost three years (January 1, 2005 to December 31, 2007).

B.B. argued that because the span between the 2005 and 2007 offenses could be as little as one year and one day (i.e., December 31, 2005 to January 1, 2007), the court should assign B.B. the moderate-risk score of three, applicable when the offending behavior spanned one to two years.

The trial court agreed with the State's position, finding in an oral opinion that "I believe with the information that I have before me the State has shown that this took place over two years." As a result, the court assigned B.B. a score of nine on factor six. When added to the scores on the remaining factors not challenged in this appeal, the court assigned B.B. an RRAS total score of

4

sixty-two, placing him in the Tier II moderate risk category (37-73 points). The trial court ordered notification of schools and community organizations in accordance with N.J.S.A. 2C:7-8(c)(2).

With respect to the Internet Registry, B.B. argued that because his sexual offenses occurred when he was a teenager, ceased fourteen years prior to the trial court hearing and prior to his offenses being revealed, and given that he is considered a low-risk offender with no community notification in Pennsylvania, inclusion of his personal identifiers on the Internet Registry was not necessary to protect the community. The trial court agreed:

> I am going to consider this to be a unique case. This gentleman has apparently gone on with his life. These offenses happened when he was 17/18-years-old. He paid the price for those offenses in the State of Pennsylvania. He has not had any . . . continuing involvement with law enforcement with respect to these types of cases.
>
> He lives with a wife. He is married. He is gainfully employed. . . . [I]t's a bell you can't un-ring when you're on [I]nternet notification. I don't do this lightly, and I think this is a very different case than the cases that usually come before this court.
>
> . . . .
>
> So I am going to grant this application by the defense in this particular case to waive his appearance on the [I]nternet.

A January 29, 2021 order memorializes the court's decision.

A-1496-20

These appeals followed. The State raises the following argument.

> THE LOWER COURT ABUSED ITS DISCRETION AND ENGAGED IN AN ARBITRARY ANALYSIS OF THE FACTS AND LAW IN DETERMINING THAT REGISTRANT'S IDENTIFIERS BE EXCLUDED FROM [THE] INTERNET REGISTRY.

In his cross-appeal, B.B. raises the following arguments.

> POINT I
>
> THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT TAILORED SCOPE OF NOTIFICATION TO INCLUDE NO INTERNET.
>
> POINT II
>
> THE TRIAL COURT DID ABUSE ITS DISCRETION WITH RESPECT TO ITS DETERMINATION OF FACTOR SIX OF THE [RRAS].

## II.

Megan's Law is intended "to protect the community from the dangers of recidivism by sexual offenders." In re Registrant C.A., 146 N.J. 71, 80 (1996); N.J.S.A. 2C:7-2(a). The statute requires certain sex offenders to register with law enforcement agencies, N.J.S.A. 2C:7-2 to -4. The registration requirement includes offenders from other states who relocate to New Jersey. N.J.S.A. 2C:7-2(c)(3). Law enforcement agencies are required "to release relevant and necessary information regarding sex offenders to the public when the release

A-1496-20

of the information is necessary for public protection . . . ." N.J.S.A. 2C:7-5(a); In re Registrant N.B., 222 N.J. 87, 95 (2015).

The scope of community notification is primarily determined by a registrant's designation as a Tier I (low), Tier II (moderate), or Tier III (high) offender. N.J.S.A. 2C:7-8(a), (c)(1) to (3). Tier designations are indicative of a registrant's risk of re-offense, as determined by the trial court's consideration of the thirteen factors in the RRAS. In re Registrant J.G., 463 N.J. Super. 263, 273 (App. Div. 2020). If the risk of re-offense is low, only law enforcement agencies likely to encounter the registrant are notified. N.J.S.A. 2C:7-8(c)(1). If the risk of re-offense is moderate, schools and community organizations in the community are also notified. N.J.S.A. 2C:7-8(c)(2). If the risk of re-offense is high, notification is also given to members of the public who are likely to encounter the registrant. N.J.S.A. 2C:7-8(c)(3).

The burden is on the State to prove by clear and convincing evidence both a registrant's risk to the community and the scope of notification necessary to protect the community. In re Registrant R.F., 317 N.J. Super. 379, 383-84 (App. Div. 1998). The evidence "must be 'so clear, direct and weighty and convincing as to enable . . . a judge . . . to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" In re

Registrant J.G., 169 N.J. 304, 331 (2001) (quoting In re R.F., 317 N.J. Super. at 384).

We review a trial court's conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion. See, e.g., In re Registrant A.I., 303 N.J. Super. 105, 114 (App. Div. 1997). "[A]n abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established polices, or rested on an impermissible basis." State v. R.Y., 242 N.J. 48, 65 (2020) (internal quotation marks omitted) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). The trial court's findings will be upheld so long as they are supported by sufficient evidence in the record and we find "no basis for disturbing those factual findings." In re J.G., 463 N.J. Super. at 277. "A trial court's interpretation of the law and the consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

We begin with B.B.'s argument that the trial court erred when it assigned him nine points under factor six of the RRAS. We conclude this issue is moot. B.B. argues that he should have been assigned three points for this factor. Were we to agree with B.B.'s argument, his total RRAS score would be reduced by six points from sixty-two to fifty-six. A score of fifty-six is in the

moderate range, as is a score of sixty-two. There would, therefore, be no meaningful benefit to B.B. from a six-point reduction in his RRAS score. The scope of community notification ordered by the trial court would remain the same.

"An issue is considered 'moot when our decision . . . can have no practical effect on the existing controversy.'" Wisniewski v. Murphy, 454 N.J. Super. 508, 518 (App. Div. 2018) (quoting Redd v. Bowman, 223 N.J. 87, 104 (2015)). Finding no issue of "substantial importance, likely to recur but capable of evading review[,]" Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996), we decline to address B.B.'s argument regarding factor six. There is, therefore, no basis in the record to disturb the trial court's designation of B.B. as a Tier II registrant.

We turn to the State's argument that the trial court erred when it found that including B.B.'s personal identifiers on the Internet Registry was not necessary to protect the community. A 2000 amendment to the State Constitution authorized the Legislature to enact legislation to include a sex offender's personal identifiers on the Internet Registry. The Constitution provides:

> Notwithstanding any other provision of this Constitution and irrespective of any right or interest in maintaining confidentiality, it shall be lawful for the Legislature to authorize by law the disclosure to the

9

general public of information pertaining to the identity, specific and general whereabouts, physical characteristics and criminal history of persons found to have committed a sex offense. The scope, manner and format of the disclosure of such information shall be determined by or pursuant to the terms of the law authorizing the disclosure.

[N.J. Const., art. IV, § 7, ¶ 12.]

The amendment was implemented through the enactment of N.J.S.A. 2C:7-13. The statute provides in relevant part:

Except as provided in subsection d. of this section, the public may, without limitation, obtain access to the Internet registry to view an individual registration record, any part of, or the entire Internet registry concerning offenders whose risk of re-offense is moderate and for whom the court has ordered notification in accordance with [N.J.S.A. 2C:7-8(c)(2)].

[N.J.S.A. 2C:7-13(c).]

Recognizing "that, in some instances, countervailing interests support a legislative determination to exclude from the Internet registry the registration information of certain sex offenders," N.J.S.A. 2C:7-12, the Legislature carved out exceptions to the Internet Registry requirement for a limited number of moderate risk offenders for whom the court ordered notification in accordance with N.J.S.A. 2C:7-8(c)(2). See N.J.S.A. 2C:7-13(d)(1) to (3). Those exceptions apply to a registrant with a "sole sex offense:" (1) that is an adjudication of delinquency; or (2) involved a violation of N.J.S.A. 2C:14-2 or

-3 (i) under circumstances involving incest or for whom the offender "was a resource family parent, a guardian or in loco parentis within the household" of the victim or (ii) involved a victim who "assented to the commission of the offense but by reason of age was not capable of giving lawful consent." Ibid. A "sole sex offense" is "a single conviction . . . for a sex offense which involved no more than one victim, no more than one occurrence or, in the case of an offense" involving incest or a parental relationship, "members of no more than a single household." N.J.S.A. 2C:7-13(d).

B.B.'s offenses do not fall into any of the statutory exemptions to N.J.S.A. 2C:7-13(c)'s mandatory inclusion of personal identifiers on the Internet Registry for Tier II offenders for whom notification was ordered pursuant to N.J.S.A. 2C:7-8(c)(2). B.B. does not have a sole sex offense and his offenses do not satisfy the other elements of N.J.S.A. 2C:7-13(d)(1) to (3).

The trial court recognized the absence of statutory authority for excluding B.B.'s personal identifiers from the Internet Registry. It instead relied on the holding in In re Registrant G.B., 147 N.J. 62, 74 (1996), to conclude that it has the authority to exclude a Tier II offender's personal identifiers from the Internet Registry. In In re G.B., the Court held that "in limited circumstances, expert testimony may be introduced at the judicial hearing in order to establish the existence of unique aspects of a registrant's

11

offense or character that render the [RRAS] score suspect." Id. at 69. The Court continued,

> [i]f believed, such evidence would lead to the conclusions that the [RRAS score] does not adequately represent the risk of recidivism for that particular registrant and that, therefore, in such circumstances the scope of notification should be more limited than that indicated by the registrant's [RRAS] score and attendant tier classification.
>
> [Ibid.]

Thus, at a tier designation hearing, "a registrant may introduce evidence that the extent of notification called for by his tier categorization is excessive because of unique aspects of his case." Id. at 85. The Court noted that "we foresee few cases in which such a challenge will be successful. . . . However, in the unusual case, facts may exist that warrant a narrowing of the notification (or, perhaps, even the expansion of notification)." Id. at 84. "We also conclude, in respect of the scope of notification, that the variable factors should contribute, perhaps through expert testimony, to narrow tailoring of community notification to each registrant's individualized situation." Ibid.

It is not readily apparent that the holding in In re G.B. applies to the question of whether a registrant's personal identifiers must be included on the Internet Registry. The holding in In re G.B., which was predicated on community notification provisions of Megan's Law that "sufficiently impinge[]

A-1496-20

on liberty interests to trigger both procedural due process and the fairness doctrine in our state," id. at 74 (quoting Doe v. Poritz, 142 N.J. 1, 30 (1995)), was issued prior to the adoption of N.J. Const., art. IV, § 7, ¶ 12. That constitutional provision permits inclusion of a registrant's personal identifiers on the Internet Registry as authorized by the Legislature, "[n]otwithstanding any other provision of this Constitution and irrespective of any right or interest in maintaining confidentiality . . . ." One might reasonably interpret the 2000 amendment to provide that once a trial court establishes a registrant's tier designation and the scope of community notification after a hearing at which the registrant can challenge the necessary scope of notification, the Legislature has the sole authority to determine whether that registrant's personal identifiers must be included on the Internet Registry. In other words, under such an interpretation, a registrant may introduce evidence at his tier designation hearing that despite having been given a Tier II designation, community notification is not warranted; however, if that argument is rejected and community notification is ordered, as was the case here, N.J.S.A. 2C:7-13(c), enacted pursuant to the 2000 amendment, mandates inclusion of the registrant's personal identifiers on the Internet Registry.

We need not decide, however, whether the constitutional amendment allows a Tier II registrant subject to notification pursuant to N.J.S.A. 2C:7-

13

8(2)(c) to establish that his personal identifiers should not be included on the Internet Registry. Even if we were to assume that In re G.B. permits a trial court to exclude such a Tier II registrant's personal identifiers from the Internet Registry, our careful review of the record reveals insufficient evidence to support the trial court's decision to do so here. B.B. did not present expert testimony regarding the likelihood of him re-offending. In fact, he called no witnesses at the trial court hearing. The court made its decision based solely on the scant information available in a limited number of documents in the record relating to B.B.'s convictions.

In addition, the facts on which the trial court relied to exclude B.B.'s personal identifiers from the Internet Registry are inapposite. The court noted that B.B. "has apparently gone on with his life" and "paid the price for [his] offenses in the State of Pennsylvania." These facts would apply to every registrant who has completed his sentence and relocated to New Jersey and are not relevant to the likelihood of re-offense.

The court also found that B.B. is married and employed. The record contains no evidence suggesting that marriage and employment are indicative of a low recidivism rate for sex offenders. The court also found that B.B. has not had "continuing involvement with law enforcement with respect to these types of cases." While this is true, the court failed to consider that B.B. was

14

convicted of five non-sexual criminal offenses between 2007 and 2016, and was incarcerated for a significant period of time. While it appears that B.B. ceased committing sexual offenses prior to his prosecution, he has not had a long record of refraining from criminal sexual activity while in the community. Moreover, the significance of B.B.'s criminal record to his likelihood to commit a sexual offense could be explained only through expert testimony based on the unique aspects of his offenses or character that make him less likely to re-offend than the general sex offender.[2]

Finally, the court noted that having one's personal identifiers on the Internet Registry is "a bell you can't un-ring." This is true in every instance in which N.J.S.A. 2C:7-13(c) applies and cannot warrant departure from the unequivocal text of the statute.

The evidence on which the trial court relied is not the type of expert opinion or other evidence specific to the unique aspects of B.B.'s offenses or character relevant to his risk of re-offense that the Court in In re G.B. held may warrant departure from a statutory notice provision. Nor does the record

---

[2]  The Legislature has provided an avenue for some registrants who committed only one sexual offense to apply to terminate the registration obligation upon proof of having not committed an offense within fifteen years following conviction or release from prison, whichever is later, and of not posing a threat to the safety of others. N.J.S.A. 2C:7-2(f). Because he has two sexual offense convictions, B.B. is not eligible for relief under that statute.

support a conclusion that B.B. presents an unusual, "outside the heartland," case. In re G.B., 147 N.J. at 82. Indeed, the court ordered Tier II community notification pursuant to N.J.S.A. 2C:7-8(2)(c). Yet, based on the same record, it determined that departure from the unequivocal text of N.J.S.A. 2C:7-13(c) was warranted. The trial court's exclusion of B.B.'s personal identifiers from the Internet Registry was a mistaken exercise of its discretion.

We cannot, therefore, affirm the trial court's decision excluding B.B.'s personal identifiers from the Internet Registry. However, in light of the difficulty in retracting information that has been published on the Internet we will delay the effective date of our decision to allow B.B., if he so choses, to seek relief in the Supreme Court without having been subject to disclosure on the Internet Registry.

The provision of the January 29, 2021 order excluding B.B.'s personal identifiers from the Internet Registry is vacated effective the latter of thirty days from the date of this opinion or resolution by the Supreme Court of any petition for certification filed in this matter. The remainder of the January 29, 2021 order is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1496-20