**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0816-14T1

| APPROVED FOR PUBLICATION |
| :---: |
| **July 20, 2015** |
| **APPELLATE DIVISION** |

IN THE MATTER OF REGISTRANT V.L.

_____

Argued May 27, 2015 — Decided July 20, 2015

Before Judges Nugent, Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Atlantic County, Docket No.
ML# 03010049.

Seth R. Belson, Assistant Deputy Public
Defender, argued the cause for appellant
V.L. (Joseph E. Krakora, Public Defender,
attorney; Mr. Belson, on the brief).

Erin M. Bisirri, Assistant Prosecutor,
argued the cause for respondent State of New
Jersey (James P. McClain, Atlantic County
Prosecutor, attorney; Ms. Bisirri, of
counsel and on the brief).

The opinion of the court was delivered by

NUGENT, J.A.D.

V.L. is a registered sex offender.  He appeals from a September 16, 2014 Law Division order reclassifying his risk of reoffense or Tier, previously designated as low or Tier 1, to moderate or Tier 2, the latter requiring notification of his presence in the community not only to certain law enforcement agencies but also to certain community institutions and organizations.  V.L. contends the trial court erred in scoring

the Registrant Risk Assessment Scale (RRAS), the instrument used by prosecutors and courts to determine whether a sex offender presents a low (Tier 1), moderate (Tier 2), or high (Tier 3) risk of reoffense. Specifically, V.L. argues that RRAS criterion seven — length of time since last offense — applies to sex offenses only, and the trial judge erred by ruling to the contrary. Our review of the Att'y Gen. Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Cmty. Notification Laws (June 1998, rev'd Feb. 2007) (the Guidelines) leads us to agree with V.L. Accordingly, we reverse and remand for a new tier hearing.

The facts are undisputed. In 2003 V.L. pled guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), a sex offense as defined in Megan's Law.[1] The court sentenced him to 364 days in jail and three years' probation. The court also ordered V.L. to comply with Megan's Law's registration provisions, N.J.S.A. 2C:7-1 to -5. These provisions require an incarcerated sex offender to register with the chief law enforcement officer of the municipality in which the offender proposes to reside upon release from jail or prison,

---

[1] Megan's Law refers to a group of bills concerning sex offenders that became law on October 31, 1994. L. 1994, c. 127-34. The term "sex offense" is defined in L. 1994, c. 133, §2 (N.J.S.A. 2C:7-2(b)).

periodically verify the address, and re-register upon a change of address.

Megan's Law's community notification provisions, N.J.S.A. 2C:7-6 to -10, require the chief law enforcement officer of the municipality where a sex offender resides to notify certain agencies and organizations of the sex offender's presence in the community. The extent of the notification depends upon the registrant's risk of reoffense. If a registrant's reoffense risk is low, law enforcement agencies likely to encounter the registrant must be notified. N.J.S.A. 2C:7-8(c)(1). If the reoffense risk is moderate, community organizations "including schools, religious and youth organizations shall be notified[.]" N.J.S.A. 2C:7-8(c)(2). If the reoffense risk is high, "the public shall be notified[.]" N.J.S.A. 2C:7-8(c)(3). A registrant's "tier" is determined in large part by the registrant's score on the RRAS.

In 2003, following V.L.'s release from his jail term for the sex offense, he was classified as a Tier 1 offender. Between 2003 and 2014, V.L. was convicted of crimes that included employing a juvenile in the commission of a crime, N.J.S.A. 2C:24-9, conspiracy, N.J.S.A. 2C:5-2, and shoplifting, N.J.S.A. 2C:20-11(b); possession of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-10(a)(1); failing to verify his address, N.J.S.A. 2C:7-2(e); and burglary, N.J.S.A. 2C:18-2.

In 2014, following V.L.'s release from his prison term for burglary and his notifying authorities of his intent to change his address, the county prosecutor sought to reclassify him as a Tier 2 offender. At the tier hearing, the court determined that V.L. fell within Tier 2. In reaching that determination, the court rejected V.L.'s argument that RRAS criteria seven, "Length of Time Since Last Offense," referred to sex offenses only. The court applied criterion seven to V.L.'s burglary conviction. As a consequence, V.L.'s overall score on the RRAS exceeded the maximum score for a low range or Tier 1 classification, and fell within the score for a moderate range or Tier 2 classification. V.L. appealed from the implementing order.

We begin our review with some fundamental observations about Megan's Law. The Legislature determined that the danger of recidivism posed by sex offenders and other designated predators "require[d] a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety." N.J.S.A. 2C:7-1a. Megan's Law's registration and notification provisions are intended to "provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons." N.J.S.A. 2C:7-1b.

The Legislature directed the Attorney General to "promulgate guidelines and procedures" for providing

notification to either law enforcement, community organizations, or the public, depending upon a sex offender's degree of risk of reoffense.  N.J.S.A. 2C:7-8.  In so directing the Attorney General, the Legislature noted explicitly that

> Factors relevant to risk of re-offense shall include, but not be limited to, the following:
>
> (1) Conditions of release that minimize risk of reoffense, including but not limited to whether the offender is under supervision of probation or parole; receiving counseling, therapy or treatment; or residing in a home situation that provides guidance and supervision;
>
> (2) Physical conditions that minimize risk of reoffense, including but not limited to advanced age or debilitating illness;
>
> (3) Criminal history factors indicative of high risk of reoffense, including:
>
> (a) Whether the offender's conduct was found to be characterized by repetitive and compulsive behavior;
>
> (b) Whether the offender served the maximum term;
>
> (c) Whether the offender committed the sex offense against a child;
>
> (4) Other criminal history factors to be considered in determining risk, including:
>
> (a) The relationship between the offender and the victim;
>
> (b) Whether the offense involved the use of a weapon, violence, or infliction of serious bodily injury;

A-0816-14T1

(c) The number, date and nature of prior offenses;

(5) Whether psychological or psychiatric profiles indicate a risk of recidivism;

(6) The offender's response to treatment;

(7) Recent behavior, including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence; and

(8) Recent threats against persons or expressions of intent to commit additional crimes.

[N.J.S.A. 2C:7-8b].

In response to the Legislative Directive, the Attorney General "convened a committee composed of mental health experts as well as members of the Law Enforcement Committee, which drafted the [RRAS] and the accompanying Registrant Risk Assessment Scale Manual (RRA Manual),[2] which explains the [RRAS]." In re Registrant C.A., 146 N.J. 71, 82 (1996). The RRAS, a copy of which is attached to this opinion as Appendix A, is divided into four categories: "Seriousness of Offense," "Offense History," "Characteristics of Offender," and "Community Support." Each category contains at least two of a total of thirteen criteria and each criterion is given a score of zero, one, or three, depending on whether the criteria as applied to the offender create a low, moderate, or high risk assessment

_____

[2] The RRA Manual is included as "Exhibit E" in the Guidelines.

correlating to a tier.  The factors are then weighted by means of a multiplier.  An overall score of 0 to 36 places an offender in Tier 1; 37 to 73, in Tier 2; and 74 to 111, Tier 3.

This appeal requires us to interpret the Guidelines and the RRA Manual.  Because such an interpretation presents a purely legal question, we owe no deference to the trial court and our review is plenary.  State v. Pomianek, 221 N.J. 66, 80 (2015); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The current RRA Manual explains:

> The purpose of this assessment is to provide a method of notification to the public so as to address the concerns of the community regarding the location of convicted sex offenders who may be a risk of committing further offenses.  The assessment process required by the statute is not intended to determine the actual probability of any one registrant reoffending.  Rather, as the Court's opinion in Doe v. Poritz makes clear, the Legislature has already concluded that the nature of the offense, i.e., a sex offense, warrants notification at some level.  "Therefore the probability of reoffense on the part of moderate- or high-risk offenders is not the issue before the court, but rather the relatively greater risk of reoffense compared either to the low-risk offender class or the moderate-risk offender class." Doe v. Poritz, 142 N.J. 1, 34 (1995).  Instead, using well recognized criteria, the panel has formulated a method of objectively placing registrants in tiers designed to provide the public with notice of the whereabouts of convicted sex offenders, such that the community will be better informed and prepared.

[Guidelines, supra, Exhibit E at 1.]

Under the heading, "The likelihood that the defendant will recidivate," the RRA Manual states:

> The expert panel reviewed existing risk assessment scales commonly used with sex offenders. In addition, the panel reviewed considerable research regarding predicting sex offender recidivism. These reviews of existing instruments and empirical literature led the panel to select risk assessment criteria that have demonstrated empirical support and common usage by sex offender experts. Other criteria which lacked such well-recognized empirical support were not included. These criteria can be divided into a few broad areas:
>
> **1.2.1. Intensity, duration, and frequency of illegal sexual behavior:** Victim selection, number of offenses/victims, duration of offensive behavior, and length of time since last offense fall into this category.
>
> **1.2.2. Antisocial lifestyle:** History of antisocial acts (other than sex offenses), substance abuse, and employment/educational stability fall into this category.
>
> **1.2.3. Involvement in treatment:** Response to treatment and therapeutic support fall into this category.
>
> **1.2.4. Social support:** Residential support falls in this category.
>
> For ease of use, on the scale itself, these criteria were grouped as follows:
>
> >   1. Seriousness of Offense
> >   2. Offense History
> >   3. Characteristics of Offender
> >   4. Community Support

A-0816-14T1

The latter three groups of criteria relate to the likelihood that the offender will recidivate. The first group are criteria that relate to the consequences to the community should the offender recidivate.

[Id. at 3-4.]

Section 1.2.1 contains an explicit statement that the "length of time since last offense fall[s] into this category[,]" namely, "[i]ntensity, duration, and frequency of illegal sexual behavior[.]"

In explaining how criterion seven — length of time since last offense — is used on the RRAS, the RRA Manual states:

> 7. **Length of time since last offense (while at risk)** is related to likelihood of reoffense. The time counted in this criterion is only time at risk — that is, when the offender is in a situation in which he or she has ready, unsupervised access to potential victims. Time incarcerated or civilly committed does not count, given that most offenders do not commit offenses under those circumstances. If, however, evidence exists (such as documented institutional disciplinary charge) that the offender did commit a sexual offense while incarcerated, then this offense should be included in the time calculation. For juveniles, time spent in residential placement without furloughs should be treated similarly to incarceration for adults.

[Id. at 7.]

The RRA Manual's reference to a sex offense committed in prison is further evidence the expert panel and Attorney General intended that criterion seven apply only to sex offenses.

A-0816-14T1

Significantly, the "offense history" category on the RRAS includes criteria eight, "History of Anti-Social Acts." In explaining that category, the RRA Manual states:

> 8. **History of antisocial acts** is a good predictor of future antisocial acts, sexual and otherwise. The more extensive the antisocial history, the worse the prognosis for the offender. Antisocial acts include crimes against persons, crimes against property, and status offenses (for juveniles). Acts which are not the subject of criminal charges but that are credibly represented in the available records may be counted. For example, sexual deviancy not the subject of criminal prosecution may be counted in this category as long as it has not already been included in Factor 5 above. In this way, any "double-counting" will be avoided. Available documentation which can be considered may include evidence of truancy, behavior problems in school or in a work situation, school suspensions, work suspensions, prior diagnoses of conduct disorder or oppositional defiant disorder. Acts perpetrated while incarcerated or committed may be included.
>
> [Id. at 8.]

The explicit inclusion in antisocial acts of crimes against persons and crimes against property, coupled with the cautionary note against double-counting, suggests that non-sex offenses should be included in criterion eight, but not in criterion seven.

The foregoing sections of the RRA Manual lead to a single conclusion concerning criterion seven: it refers to sex offenses only, not to non-sex offenses. The quoted sections also lead to

10                                                          A-0816-14T1

the conclusion that non-sex offenses are included in category eight.

The State has offered no persuasive argument to the contrary.[3] Although the State accurately summarizes the purpose of Megan's Law's notification requirements and correctly asserts that V.L.'s changing circumstances warranted recalculating his risk assessment, those considerations are not relevant to whether non-sex offenses should be included in RRAS criterion seven.

The State also points to the definition of offense in N.J.S.A. 2C:1-14k, namely, "a crime, a disorderly persons offense or a petty disorderly persons offense unless a particular section in this code is intended to apply to less than all three[.]" Neither the Guidelines nor the RRA Manual, however, refer to or incorporate the definitional section of the New Jersey Code of Criminal Justice.[4] Were we to consider the definition of offense in N.J.S.A. 2C:1-14k in a document that neither references it nor suggests in any way that it should be

---

[3] The State is not represented in this case by the Attorney General. The Attorney General has taken no position on the issue.

[4] This appeal was argued back-to-back with In re A.D., ___ N.J. Super. ___ (App. Div. 2015), which concerns the definition of the term offense in N.J.S.A. 2C:1-14k and the use of the term in N.J.S.A. 2C:7-2f, the Megan's Law provision that permits registrants to apply for termination of their registration obligations.

followed, we would also consider the prefatory language in N.J.S.A. 2C:1-14 that the definitions mean what they say throughout the Code "unless a different meaning plainly is required[.]"  The context of the word offense in the RRA Manual's explanatory sections make plain that the term offense in criterion seven refers to a sex offense.

For the foregoing reasons, we reverse the order classifying V.L. as a Tier 2 offender and remand for a Tier hearing.  We do not suggest that V.L. should be classified or not classified in any Tier.  Rather, we hold only that non-sex offenses are not to be included in criterion seven of the RRAS.

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

# APPENDIX A
## REGISTRANT RISK ASSESSMENT SCALE

| Criteria | Low Risk | 0 | Moderate Risk | 1 | High Risk | 3 | Comments | Total |
|---|---|---|---|---|---|---|---|---|
| **Seriousness of Offense x5** | | | | | | | | |
| 1. Degree of Force | no physical force; no threats | | threats; minor physical force | | violent; use of weapon; significant victim harm | | | |
| 2. Degree of Contact | no contact; fondling over clothing | | fondling under clothing | | penetration | | | |
| 3. Age of victim | 18 or over | | 13-17 | | under 13 | | | |
| | | | | | | | Subtotal: | |
| **Offense History x3** | | | | | | | | |
| 4. Victim Selection | household/family member | | acquaintance | | stranger | | | |
| 5. Number of Offenses/ Victims | first known offense/victim | | two known offenses/victims | | three or more offenses/victims | | | |
| 6. Duration of Offensive Behavious | less than 1 year | | 1 to 2 years | | over 2 years | | | |
| 7. Length of Time Since Last Offense | 5 or more years | | more than 1 but less than 5 years | | 1 year or less | | | |
| 8. History of Anti-Social Acts | no history | | limited history | | extensive history | | | |
| | | | | | | | Subtotal: | |
| **Characteristics of Offender x2** | | | | | | | | |
| 9. Response to Treatment | good progress | | limited progress | | prior unsuccessful treatment or no progress in current treatment | | | |
| 10. Substance Abuse | no history of abuse | | in remission | | not in remission | | | |
| | | | | | | | Subtotal: | |
| **Community Support x1** | | | | | | | | |
| 11. Therapeutic Support | current/ continued involvement in therapy | | intermittent | | no involvement | | | |
| 12. Residential Support | supportive/ supervised setting; appropriate location | | stable and appropriate location but no external support system | | problematic location and/or unstable; isolated | | | |
| 13. Employment/ Educational Stability | stable and appropriate | | intermittent but appropriate | | inappropriate or none | | | |
| | | | | | | | Subtotal: | |
| | | | | | | | Total: | |

Scoring:  Highest possible total score = 111
Low Range: 0-36          Moderate Range: 37-73          High Range: 74-111          )816-14T1