# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3265-23

IN THE MATTER OF
REGISTRANT J.K.G.

_____

Argued November 17, 2025 – Decided December 30, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ML-23-07-0013.

James H. Maynard argued the cause for appellant J.K.G. (Maynard Law Office, LLC, attorneys; James H. Maynard and Kaitlin M. Kent, on the briefs).

Shep A. Gerszberg, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Theodore N. Stephens II, Essex County Prosecutor, attorney; Shep A. Gerszberg, of counsel and on the brief).

PER CURIAM

Registrant J.K.G.[1] appeals from two orders: a February 20, 2024 order denying his request for a N.J.R.E. 104 motion hearing; and a June 12, 2024 order

---

[1]  We use initials because records relating to child victims of sexual assault or abuse are excluded from public access under Rule 1:38-3(c)(9).

classifying him as a Tier II-Moderate Risk offender pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -23 requiring internet notification. Registrant challenges his classification as a Tier II offender, arguing the court abused its discretion by failing to consider the nature of his offense—incest—and "blindly" applying the Registrant Risk Assessment Scale ("RRAS") factors to arrive at a score that placed him in Tier II. Perceiving no abuse of discretion by the court, we affirm.

I.

The relevant facts are not in dispute. Registrant was charged with one count of second-degree sexual assault of his minor daughter, N.J.S.A. 2C:14-2(b), and one count second-degree endangering the welfare of a child by a caretaker, N.J.S.A. 2C:24-4(a)(1). He ultimately pled guilty to a reduced charge of third-degree endangering the welfare of a child by a non-caretaker, N.J.S.A. 2C:24-4(a)(1), and the State agreed to dismiss the remaining second-degree sexual assault charge. The court sentenced him to parole supervision for life, fines, penalties, and Megan's Law registration requirements.

Approximately six months later, the State moved to classify registrant as Tier II pursuant to N.J.S.A. 2C:7-8 and impose a Tier II scope of community notification, including placement on the New Jersey Sex Offender Internet Registry, N.J.S.A. 2C:7-13(d)(1). Registrant later moved for a N.J.R.E. 104

2

hearing on the admissibility of the RRAS score in Megan's Law proceedings, arguing the court should have applied the standard in State v. Olenowski, 253 N.J. 133 (2023) and Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993). The court denied registrant's motion and issued a written decision on February 20, 2024. The court framed the issue as registrant "seek[ing] an evidentiary hearing under [N.J.R.E.] 104 to establish grounds to exclude the . . . [RRAS] scores in favor of other alternative risk assessments measures under . . . Olenowski . . . applying the Daubert standard to criminal and quasi-criminal cases." The court explained that registrant "contend[s] that Olenowski requires that the RRAS meet the admissibility standards in Megan's Law tiering hearings."

The court reviewed key aspects of the decisional law underpinning Megan's Law and the tier classification framework, including the State's burden of proving by clear and convincing evidence that the proposed tier classification and scope of community notification for a particular registrant are both warranted. The court next noted that once the State meets its burden, the registrant then has the burden of producing evidence challenging the prosecutor's determination on both issues. The court explained that by addressing a registrant's classification, "a judge is free to consider reliable

A-3265-23

evidence beyond the RRAS score, even if such evidence would not be admissible under our Rules of Evidence, because the 'hearing process . . . is not governed by the [R]ules of [E]vidence,'" and emphasized that the Rules of Evidence "do not apply in the civil Megan's Law tiering proceeding." (quoting In re Registrant C.A., 146 N.J. 71, 83 (1996)) (alterations in original). The court found a N.J.R.E. 104 hearing to be unnecessary and concluded it would not be helpful in tiering registrant.

While the N.J.R.E. 104 motion was pending, registrant moved for a downward departure in his tier classification under the "outside the heartland" exception to Megan's Law. Registrant contended the exception was warranted because, as an incest offender, he was at lower risk than shown on the RRAS scale.[2]

At the March 26, 2024 hearing, registrant argued the RRAS is unreliable and the court should rely on the STATIC-99, STABLE 2007, and ACUTE 2007 actuarial risk tools to establish that he is a lower risk than the Tier II RRAS score reflected. He asserted that the RRAS should be ruled inadmissible in Megan's Law hearings because the RRAS fails all four Daubert criteria: (1)

---

[2] The tier hearing scheduled for February 29, was adjourned until March 26, 2024 for the court to address registrant's newly filed motion for an outside the heartland exception.

testability, (2) peer review, (3) error rate, and (4) general acceptance. Registrant further maintained an evidentiary hearing was necessary to build a record for any appellate review.

Registrant presented expert witness, Dr. James Reynolds, who testified to evaluating him and filing two written reports in which he concluded registrant presented a low risk of sexually reoffending. According to Dr. Reynolds, he reached this conclusion after applying the RRAS, STATIC-99, STABLE 2007, and ACUTE 2007 actuarial tools, all of which showed low-risk or below-average results for registrant. He further testified that the RRAS does not adequately account for the lowest rates of sexual recidivism for incest offenders.

Dr. Reynolds acknowledged that much of the information used in risk-assessment instruments such as STABLE-2007 and ACUTE-2007 relies on self-reporting, and he conceded that he could not independently verify whether registrant masturbates or harbors deviant sexual fantasies. Dr. Reynolds testified that "low risk" does not mean "no risk," and that he does not monitor the long-term outcomes or recidivism of the individuals he evaluates unless he is notified.

The State maintained Dr. Reynolds' approach was favorable to the defense and failed to consider relevant evidence, including self-report reliability and

A-3265-23

victim statements. The State further argued that partial admission in treatments suggested treatment difficulties and registrant's current lifestyle, including dating and spending time around children, justified broader notification, Megan's Law hearings are not bound by N.J.R.E. 702, and expert reports need only address the individual registrant's unique aspects, not create a general "battle of the experts." It further asserted that the RRAS is designed to promote uniformity across counties, and additional actuarial evidence, such as STATIC-99, may be submitted. The State warned that requiring full-scale expert testimony risks making outcomes dependent on a registrant's financial resources and ability to pay for those expert opinions.[3]

The court issued an oral decision denying this motion and ordered Tier II classification and notification. The court first acknowledged that the parties had agreed upon "certain adjustments" to the RRAS categories 7 and 13, which reduced registrant's score from 49 to 40, and that the State sought to add 2 points

---

[3] The court noted in adopting Megan's Law, the Legislature expressly delegated to the Attorney General the authority to promulgate guidelines identifying factors relevant to assessing the risk of re-offense. N.J.S.A. 2C:7-8. Moreover, "courts do not act as a super-legislature." See Trautmann ex rel. Trautmann v. Christie, 211 N.J. 300, 307 (2012) (quoting Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222 (1985)). As the court stated, "[i]t is within the Legislature's purview to determine how Megan's Law should be implemented, if it does not offend constitutional principles."

A-3265-23

to bring the score back up to 42. The State further argued a temporary restraining order ("TRO") involving registrant in connection with this case, and videos recovered from registrant's laptop depicting bestiality as proof registrants score should increase as to factor eight (history of antisocial acts). The court, however, found the TRO was not an antisocial act and had already been considered in another category. Addressing the videos, the court acknowledged that, although bestiality is illegal in New Jersey, "the law does not criminalize . . . viewing images of bestiality," which registrant was alleged to have done by virtue of the images found on his computer. The court, however, considered the videos to be evidence of a deviant act, and found the State's category eight score to be appropriate.

In addressing registrant's motion for an outside the heartland exception, the court found "there isn't anything so idiosyncratic about [registrant]'s case that would warrant an outside the heartland finding either. . . . [T]he indications here are that even though it's a[n] incest case, there's nothing particularly significant that I heard or that I read in any of this paperwork that indicates that it's any different than any other incest case." In reaching this conclusion, the court considered the victim's statements that there were "multiple incidents," and disagreed with registrant's view that certain other acts involving his victim

7

were "untried and unproven."[4] The court found registrant had a RRAS score of 42, making his Tier II classification correct.

Addressing the issue of whether registrant should be placed on the State's internet registry, the court found it was appropriate because he was convicted of endangering the welfare of a child. On the same day, registrant moved for and was granted a stay of the court's Tier II notification for 7 days pending appeal. And, we subsequently granted leave to file an emergent motion for a stay pending appeal and simultaneously extended the stay of Tier II notifications through our disposition of the emergent motion.

On June 28, 2024, we denied his emergent motion because registrant failed to show both irreparable harm and a high likelihood of success on the merits. We were also unpersuaded by registrant's argument that the scientific deficiencies of the RRAS under Daubert and In re Accutane Litigation, 234 N.J. 340 (2018), warranted a stay, as he failed to set forth a prima facie showing of a reliable alternative instrument or new empirical evidence relied on by professionals in assessing risk.

Registrant raises the following points on appeal:

---

[4] In making this finding, the court referred to registrant's statement in Dr. Reynolds' report.

A-3265-23

I. THE TRIAL COURT ABUSED ITS DISCRETION BY IGNORING THE COURT'S PRECEDENT IN [In re Registrant G.B., 147 N.J. 62 (1996)], AND THE ATTORNEY GENERAL GUIDELINES FOR DETERMINING TIER CLASSIFICATION AND SCOPE OF NOTIFICATION.

    A. Under Controlling Case Law Precedent, the Megan's Law Court Was Obligated to Consider the Nature of [registrant's] Offense (Incest) and His Positive Psychological Profile, Rather than Blindly Follow the RRAS's Numerical Result.

    B. Even if This Court Affirms the Megan's Law Court's Tier Classification, the Court Should Remand the Matter and Direct the Megan's Law Court to Order a Tier One Scope of Notification.

        1. The Appropriate Scope of Notification for Incest-Only Offenders Is Notification to Local Law Enforcement Only.

        2. The State and the Court Failed to Provide Any Basis for Deviating From the [Attorney General Guidelines] for Scopes of Notification for Incest Only Offenders.

II. N.J.S.A. 2C:7-13 DIFFERENTIALLY TREATS INCEST OFFENDERS WHO VIOLATE N.J.S.A. 2C:24-4(A) VERSUS THOSE WHO VIOLATE N.J.S.A. 2C:14-2 OR [N.J.S.A. 2C:14-3], IN A MANNER THAT VIOLATES

9

EQUAL PROTECTION UNDER THE STATE AND FEDERAL CONSTITUTIONS.

III.    SCIENTIFIC, TECHNICAL OR SPECIALIZED KNOWLEDGE MUST BE RELIABLE TO BE ADMITTED AS EVIDENCE IN A MEGAN'S LAW PROCEEDING.

    A.    The RRAS Is Subject to Challenge "Based on Empirical Studies or Data Developed since 1996."

    B.    The Megan's Law Court Abused Its Discretion by Denying [registrant] an Evidentiary Hearing on the Admissibility of the RRAS in Megan's Law Proceeding.

## II.

"We review a trial court's conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion." In re Registrant B.B., 472 N.J. Super. 612, 619 (App. Div. 2022) (citing In re Registrant A.I., 303 N.J. Super. 105, 114 (App. Div. 1997)). Our Supreme Court has held, "an abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Further, "there is no abuse of discretion when a trial court's factual findings are supported

by 'sufficient credible evidence in the record.'" In re Registrant J.G., 463 N.J. Super. 263, 277 (App. Div. 2020) (quoting In re A.R., 234 N.J. 82, 104 (2018)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted). Therefore, when a court makes a factual finding that is "supported by sufficient credible evidence in the record," this court should uphold the decision. In re A.G., 234 N.J. 82,104 (2018) (quoting State v. P.S., 202 N.J. 232, 249 (2010)).

Megan's Law is intended "to protect the community from the dangers of recidivism by sexual offenders." C.A., 146 N.J. at 80 (citing N.J.S.A. 2C:7-1(a)). In fact, "[t]he expressed purposes of the registration and notification procedures [under Megan's Law] are 'public safety' and 'preventing and promptly resolving incidents involving sexual abuse and missing persons.'" In re Registrant A.A., 461 N.J. Super. 385, 394 (App. Div. 2019) (quoting N.J.S.A. 2C:7-1). "The law is remedial and not intended to be punitive." Ibid. (citing Doe v. Poritz, 142 N.J. 1, 12-13 (1995)).

Administered through Megan's Law, the RRAS was developed for the State's use to establish a registrant's tier classification as a means of evaluating

re-offense and as a manner of community notification. In re Registrant T.T., 188 N.J. 321, 328 (2006) (citing C.A., 146 N.J. at 110). The extent of community notification chiefly results from a registrant's designation as a Tier I (low), Tier II (moderate), or Tier III (high) offender. N.J.S.A. 2C:7-8(a), (c)(1) to (3). Tier designations reflect a registrant's risk of re-offense. A.A., 461 N.J. Super. at 402. If the risk of re-offense is deemed low, only law enforcement agencies likely to encounter the registrant are notified. N.J.S.A. 2C:7-8(c)(1). If the risk of re-offense is considered moderate, schools and community organizations in the community also must be notified. N.J.S.A. 2C:7-8(c)(2). But if the risk of re-offense is high, members of the public likely to encounter the registrant likewise must be notified. N.J.S.A. 2C:7-8(c)(3).

These tier designations are determined by a judge assessing, among other information, various categories and risk assessment criteria.[5] In re Registrant C.J., 474 N.J. Super. 97, 106 (App. Div. 2022) (citing A.A., 461 N.J. Super. at 402). The RRAS contains four categories: seriousness of the offense; offense history; personal characteristics; and community support. State v. C.W., 449

---

[5] Given the need for uniformity, N.J.S.A. 2C:7-8(a) authorized the Attorney General to create guidelines and procedures to evaluate a registrant's risk of re-offense. See Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws (rev'd Feb. 2007).

N.J. Super. 231, 260 (App. Div. 2017) (citing In re Registrant V.L., 441 N.J. Super. 425, 429 (App. Div. 2015)). "Although it is not scientific evidence, the [RRAS] is a 'reliable and useful tool that the State can use to establish its prima facie case concerning a registrant's tier classification and manner of notification.'" In re Registrant M.L., 479 N.J. Super. 433, 443 (App. Div. 2024) (quoting C.A., 146 N.J. at 110).

"The first two categories, '[s]eriousness of [o]ffense' and '[o]ffense [h]istory,' are considered static categories because they relate to the registrant's prior criminal conduct." Id. at 103. The next two categories, "[c]haracteristics of '[o]ffender' and '[c]ommunity [s]upport' are considered to be dynamic categories, because they are evidenced by current conditions." Ibid. The "static factors" relate to past criminal conduct and weigh more heavily under the RRAS than the dynamic factors. In re Registrant J.M., 167 N.J. 490, 500 (2001).

The "[s]eriousness of [o]ffense" category takes into account: (1) degree of force; (2) degree of contact; and (3) age of the victim(s). C.A., 146 N.J. at 103. The "[o]ffense [h]istory" category covers: (4) victim selection; (5) number of offenses/victims; (6) duration of offensive behavior; (7) length of time since last offense; and (8) any history of anti-social acts. Ibid. The "[c]haracteristics of [o]ffender" category accounts for the registrant's: (9) response to treatment

and (10) substance abuse.  Id. at 103-04.  The final category, "[c]ommunity [s]upport" considers a registrant's:  (11) therapeutic support; (12) residential support; and (13) employment/educational stability.  Id. at 104.

"Each factor is assigned a risk level of low (0), moderate (1), or high (3), and '[t]he total for all levels within a category provides a score that is then weighted based on the particular category.'"  A.A., 461 N.J. Super. at 402 (alteration in original) (emphasis omitted) (quoting C.A., 146 N.J. at 104).  "An RRAS score [totaling] 0 to 36 is low risk; 37 to 73 moderate risk; and 74 or more, high risk."  T.T., 188 N.J. at 329 (citing Attorney General Guidelines at 4).

"While a tier classification made on the basis of the [RRAS] should be afforded deference, it is not absolute; a Megan's Law judge must conduct an independent review of the merits of the case and not rely solely on the [RRAS] score."  M.L., 479 N.J. Super. 433, 443 (App. Div. 2024) (citing C.A., 146 N.J. at 108-09).  The State ultimately bears the burden of proving "by clear and convincing evidence both the registrant's level of risk to the community and the scope of notification necessary to protect the community."  Ibid. (citing In re Registrant R.F., 317 N.J. Super. 379, 383-84 (App. Div. 1998)).  Stated differently, the evidence "must be 'so clear, direct and weighty and convincing

14

as to enable . . . a judge . . . to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" In re Registrant J.G., 169 N.J. 304, 331 (2001) (quoting R.F., 317 N.J. Super. at 384).

Atypical cases in which the RRAS score is rendered suspect due to unique facts require an adjustment of the level of community notification indicated; this situation is commonly referred to as falling outside the heartland of Megan's Law cases. G.B., 147 N.J. at 84.

"In challenging a tier determination, a registrant may argue that (1) the RRAS score was erroneously calculated, (2) the case falls outside the 'heartland' of Megan's Law cases, or (3) the extent of community notification required is excessive due to 'unique' aspects of the registrant's case." J.G., 463 N.J. Super. at 275 (citing T.T., 188 N.J. at 330). When a registrant objects to their tier, the State has the "burden of going forward with its prima facie case, consisting of . . . evidence [to] justif[y] the proposed risk level and manner of notification." G.B., 147 N.J. at 75 (citing Poritz, 142 N.J. at 32). Once the State has met its burden, the burden shifts to the registrant to persuade the court "by a preponderance of the evidence that the proposed tier designation and notification did not conform with the laws and the Scale." Ibid. (citing Poritz, 142 N.J. at 32). However, although "'the [s]cale provides a useful guide for the

15

prosecutors and court to evaluate risk of re-offense,'" the court must still make "a value judgment" in determining the proper tier classification and scope of community notification. G.B., 147 N.J. at 78 (quoting C.A., 146 N.J. at 109).

In addressing a registrant's classification, a court is free to consider reliable evidence besides the RRAS score, even if such evidence would not be otherwise admissible, because the "hearing process . . . is not governed by the [R]ules of [E]vidence." C.A., 146 N.J. at 83. When calculating a registrant's score on the RRAS, "the State is free to rely on hearsay statements to support its assertions and does not need to base its calculations surrounding the underlying offense solely on the facts of conviction." G.B., 147 N.J. at 79 (citing C.A., 146 N.J. at 88-93). The court may consider "all reliable information" including "[s]exual offenses, not the subject of a conviction" and supported by admissions, police reports, and psychiatric reports. In re Registrant J.W., 410 N.J. Super. 125, 130-31 (App. Div. 2009) (citing C.A., 146 N.J. at 71).

## A.

Registrant first argues the court abused its discretion by classifying him as a Tier II offender under the RRAS score and by failing to apply G.B. and the Attorney General Guidelines governing incest-only offenders. More particularly, he asserts that the RRAS inadequately measures risk in this case

16

and that his expert's uncontroverted assessment supported a Tier I outside the heartland reduction.

We reject registrant's primary contention the court abused its discretion by ignoring and failing to apply our Supreme Court's holding in G.B. to conclude that as an incest offender, he is entitled to an "outside the heartland exception" tier reduction.  In G.B., the Court held that a registrant may present evidence that their case falls outside the heartland, which requires the trial court to balance the registrant's right to privacy against the community's interest in safety and notification.  147 N.J. at 74.  In applying this balancing test, the Attorney General Guidelines are a reliable tool.  Id. at 81-82.

The State emphasizes the court's consideration of all arguments as to the nature of the registrant's offense and expert testimony, stating "there was a rational explanation for the registrant's Tier II designation, [and the court] did not depart from established policies nor did it rest on an impermissible basis."  Further, "the registrant brings no evidence that [Dr. Reynolds'] assessment was not considered, weighed and incorporated into the trial court's decision making," specifically referring to the judge's statement that he "reviewed [Dr. Reynolds'] scoring . . . [and] his report."  We agree.

A-3265-23

We are satisfied based on our review of the record that the court examined the testimony of the parties and the documentary evidence, including Dr. Reynolds' expert report, and the law to arrive at its conclusion. It is well settled that "[a]n abuse of discretion arises 'when a decision is made without a rational explanation, inexplicably departs from established policies, or rest on an impermissible basis,'" none of which is present here. Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg, 171 N.J. at 571).

We further discern no error in the court's determination that this case did not present the type of unique circumstances warranting an outside the heartland reduction to Tier I. Again, the decision to depart from the RRAS is committed to the court's independent discretion, and the court need not accept an expert's opinion, even if that opinion is unrefuted. G.B., 147 N.J. at 78-79; see also Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019).

Although the court recognized that departures may be appropriate in limited situations, the court credited the testimony of the victim that she endured "multiple incidents" of incest and concluded "there is [not] anything so idiosyncratic about [registrant]'s case that would warrant an outside the heartland finding." (citing J.G., 463 N.J. Super. at 276) (upholding RRAS challenges if "based on empirical studies or data developed since 1996").

We similarly reject registrant's argument the court abused its discretion by failing to adopt his expert's opinion merely because it was unrefuted. This argument has no support in our jurisprudence because it is incumbent upon the fact finder—here the court—to assess the testimony of each witness and the evidence presented to determine what weight, if any, is accorded to that testimony, and judges may accept or reject an expert's testimony in whole or in part. See State v. S.N., 231 N.J. 497, 514-15 (2018). Moreover, given Dr. Reynolds's own testimony that his conclusions relied heavily on the registrant's self-reporting, we cannot conclude that the court abused its discretion in rejecting his opinion and finding that "the basis for [Dr. Reynolds'] scoring was in fact the sole conviction [incest], and that in his scoring, he treated the other alleged acts as untried and unproven." The court here was therefore within its discretion to find the RRAS and other State evidence more persuasive. G.B., 147 N.J. at 78-79. When the court conducts a thorough review of the record and properly applies the law and makes findings that are supported by clear and convincing evidence, deference to the court's judgment is required. M.L., 479 N.J. Super. at 443. Thus, the court properly ruled that registrant's conduct equated to a moderate risk score on the degree-of-force factor of the RRAS. Ibid.

A-3265-23

B.

Registrant further contends that even if Tier II is affirmed, the court should have limited the scope of notification to Tier I. Relying on G.B., registrant argues the appropriate scope of notification for incest only offenders is to law enforcement, not internet registry. In his brief, registrant contends the G.B. court "provided guidance on an alternative basis for limiting the scope of notification for incest offenders." More particularly, registrant highlights the following statement from G.B., arguing "[i]n cases of incest-type offenders, for example, registrants may be able to show that normal Tier [II] or Tier [III] notification is inappropriate given the intrafamilial nature of the offense." Additionally, registrant cites to language in the Attorney General Guidelines, stating "[w]hen it is determined that an offender falls within the Tier [II] category, 'the decision as to which group should appropriately be notified should be made on a case-by-case basis.'"

As the State noted, the use of "the word 'may' . . . as used in G.B. and the Attorney General Guidelines is permissive language, . . . not requiring such a finding or even raising the likelihood of Tier I notification to a presumption which must be overcome by the evidence." Registrant's arguments are wholly unsupported by the express language in the applicable case law and Attorney

20

General Guidelines. Because we are convinced the language cited by registrant is permissive, not mandatory, and the court engaged in the required case-by-case analysis, registrant's arguments are without merit.

C.

We next turn to registrant's equal-protection claim that it is irrational to mandate Internet Registry inclusion for his conviction under N.J.S.A. 2C:24-4(a)(1) when individuals convicted of incest under N.J.S.A. 2C:14-2 or N.J.S.A. 2C:14-3 are exempt. He maintains the court erred when it scored him without applying the exception to the internet registry based on his conviction for endangering the welfare of a child, and further argues that if he had been convicted of the more serious incest only sexual assault charge under N.J.S.A. 2C:14-2(b), he would have had the benefit of the exception from internet registry.

The State maintains registrant's assertion of an equal protection violation are without merit as the sexual assault and endangering statutes criminalize different conduct. They assert the Legislature has the authority to distinguish registry eligibility, the distinction is rational under both state and federal law, and registrant knowingly pleaded to a charge with wider notification consequences and requirements.

21

N.J.S.A. 2C:7-13(d) provides in relevant part:

> d. The individual registration record of an offender whose risk of re-offense has been determined to be moderate and for whom the court has ordered notification in accordance with [N.J.S.A. 2C:7–8(c)(2)] shall not be made available to the public on the Internet registry if the sole sex offense committed by the offender which renders him subject to the requirements of [Megan's Law] is one of the following:
>
> (1) An adjudication of delinquency for any sex offense as defined in [N.J.S.A. 2C:7–2(b)(2)];
>
> (2) A conviction or acquittal by reason of insanity for a violation of [N.J.S.A.] 2C:14–2 or [N.J.S.A.] 2C:14–3 under circumstances in which the offender was related to the victim by blood or affinity to the third degree or was a resource family parent, a guardian, or stood in loco parentis within the household; or
>
> (3) A conviction or acquittal by reason of insanity for a violation of [N.J.S.A.] 2C:142 or [N.J.S.A.] 2C:14–3 in any case in which the victim assented to the commission of the offense but by reason of age was not capable of giving lawful consent.
>
> [N.J.S.A. 2C:7–13(d).]

N.J.S.A. 2C:7-13(d) later defines a "sole sex offense" as "a single conviction, adjudication of guilty or acquittal by reason of insanity, as the case may be, for a sex offense which involved no more than one victim, no more than one occurrence . . . ."  "[I]n the case of an offense which meets the criteria of [N.J.S.A. 2C:7-13(d)(2)]," the statute distinguishes "a sole sex offense" to mean

"members of no more than a single household." N.J.S.A. 2C:7-13(d). N.J.S.A. 2C:7–2(b)(2) clarifies "sex offense" to include endangering the welfare of a child by a non-caretaker, N.J.S.A. 2C:24-4(a)(1), for which is the crime registrant ultimately pled guilty.

We note initially that "a statute is presumed to be constitutional and that a court should exercise sparingly the power to declare a statute unconstitutional." Jordan v. Horsemen's Benevolent & Protective Ass'n, 90 N.J. 422, 433 (1982) (citations omitted). Although the presumption of validity may be rebutted, the party attacking the constitutionality of a statute bears a heavy burden. State Farm Mut. Auto Ins. Co. v. State, 124 N.J. 32, 45-46 (1991) (citing Hutton Park Gardens v. Town Council, 68 N.J. 543, 564-65 (1975)).

Significantly, our State Constitution, Article IV, Section VII, Para. 12 provides "it shall be lawful for the Legislature to authorize by law the disclosure to the general public of information pertaining to the identity, specific and general whereabouts, physical characteristics and criminal history of persons found to have committed a sex offense." Our legislature retains broad discretion to classify offenders and levy consequences to attach to certain consequences. "'[T]he equal protection clause does not prohibit the legislature from recognizing 'degrees of evil' and differentiating between crimes or

offenders . . . ." A.A. v. State, 384 N.J. Super. 481, 495-96 (App. Div. 2006), certif. denied, 188 N.J. 346 (2006), cert. denied, 549 U.S. 1181 (2007) (quoting Skinner v. Oklahoma, 316 U.S. 535, 540 (1942)).

We also find our Supreme Court's interpretation of N.J.S.A. 2C:7-13(d)(2), known as the household/incest exception, to be instructive. See In re N.B., 222 N.J. 87, 102 (2015). In N.B., the registrant, charged with multiple acts of unlawful sexual conduct with a blood-related minor, pled guilty to one count of second-degree sexual assault, N.J.S.A. 2C:14-2(b). Id. at 90-91. In determining whether he had committed a "sole sex offense" within the scope of the household/incest exception, the Court discussed the differences between the household/incest exception and the two other exceptions of N.J.S.A. 2C:7-13(d). The Court noted an offender who falls into the "household/incest category governed by N.J.S.A. 2C:7–13(d)(2)" qualifies for a "broader" exception because "[t]he statutory text suggests that N.J.S.A. 2C:7–13(d)(2) is intended to be less restrictive than the two other exceptions prescribed by N.J.S.A. 2C:7–13(d)." N.B., 222 N.J. at 100 (internal citations omitted).

As applied to N.J.S.A. 2C:7–13(d)(1), the exception under which registrant's child endangerment conviction falls, the statute limits "sole sex offense" to "a single conviction, adjudication of guilty or acquittal by reason of

24

insanity, as the case may be," for a sex offense involving "no more than one victim, no more than one occurrence . . . ." N.J.S.A. 2C:7–13(d); see also N.J.S.A. 2C:7–2(b)(2). Here, our Legislature's decision to mandate Internet Registry inclusion for convictions under N.J.S.A. 2C:24-4(a)(1), while exempting certain intrafamilial offenses under N.J.S.A. 2C:14-2 and -3, signals its authority to distinguish between different offenses and tailor public-notification requirements. As explained in N.B., the Legislature intended for this exception to apply to offenders with moderate risk convicted of a "sole sex offense" as defined under the narrower definition for N.J.S.A. 2C:7–13(d)(1). N.B., 222 N.J. at 100 (quoting S. Comm. Statement to S. 1208 (May 6, 2004); Assemb. Comm. Statement to S. 1208 (June 3, 2004)). Thus, we remain unpersuaded by registrant's claim of a Constitutional violation.

### D.

Lastly, registrant argues the RRAS should be admissible only if deemed reliable under Daubert and N.J.R.E. 702. Registrant avers that his expert presented a prima facie showing for a N.J.R.E. 104 hearing and that the denial of this hearing prevented him from challenging the RRAS's scientific basis. We agree with the State, as also noted by the court, that trial courts may consider the RRAS score and any additional reliable information, including expert

opinions, without the need to conduct a N.J.R.E. 104 hearing on the admissibility of RRAS, when not required, as here. And, registrants may present individualized evidence showing their case falls outside the heartland. J.G., 463 N.J. Super at 276. Because registrant offered no basis for such a departure or for subjecting the RRAS to an evidentiary hearing, the court's ruling was well within its discretion.

In sum, we are satisfied the court thoroughly reviewed the evidence and arguments in finding the State established, by clear and convincing evidence, registrant's RRAS score of 42, thereby designating him as a Tier II offender and denying the N.J.R.E. 104 hearing. And, we discern no abuse of discretion in the court's tier designation and notification requirements.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3265-23